CLAPP v. UNEMPLOYMENT COMPENSATION COMMISSION.

1. APPEAL AND ERROR—UNEMPLOYMENT COMPENSATION—QUESTIONS REVIEWABLE—UNEMPLOYMENT DUE TO LACK OF PARTS.

Where award of unemployment compensation for period during which intervenor automobile manufacturer laid off certain employees for a temporary shutdown because of lack of frames, normally supplied by another corporation, is not questioned, notwithstanding that during a portion of such period a general strike was in progress in intervenor's plant, portion of award as to period of inability to operate for lack of frames is not of concern on appeal from award as to period after frames became available.

2. MASTER AND SERVANT—LAYOFF—STRIKES—CANCELLATION OF AGREEMENT WITH EXCLUSIVE BARGAINING AGENT—RE-EMPLOYMENT.

Automobile manufacturer's cancellation of bargaining agreement with exclusive bargaining agent for its production and maintenance employees while strike was in progress, which strike was called after layoff was necessitated because frame supplier was idled by strike of its own employees did not indicate intention on the part of the employer not to re-employ the employees nor prevent re-employment of those willing to return.

3. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION—LABOR DISPUTE.

Where, after intervenor automobile manufacturer laid off certain employees for lack of frames, a general strike was called of such employees and others and such strike con-

REFERENCES FOR POINTS IN HEADNOTES

[2–8] 48 Am Jur, Social Security, Unemployment Insurance, etc., §§ 35, 36.

[2–8] Construction and application of provisions of social security or unemployment compensation acts regarding disqualification for benefits because of labor disputes or strikes. 135 ALR 920; 148 ALR 1309; 154 ALR 672; 158 ALR 396; 165 ALR 1382; 173 ALR 490.

[9] 14 Am Jur, Costs, § 91.

tinued for nearly three months after frames became available, plaintiff claimants for unemployment compensation · were bound by provisions of statute disqualifying claimants for work stoppage due to labor dispute and testimony supported finding of appeal board that shut down of plant was then entirely due to strike and of the futility of attempting recall of employees (PA 1936 [Ex Sess], No 1, § 29, as amended by PA 1943, No 246).

4. SAME—BURDEN OF PROVING ELIGIBILITY.
   The burden of proving eligibility to unemployment compensation benefits is on the claimants therefor.

5. SAME—DIFFERENT DEPARTMENTS OF SAME ESTABLISHMENT—EVIDENCE.
   On intervening automobile manufacturer's appeal from award of unemployment compensation to its employees who were all members of the same union which ordered the strike, evidence *held,* sufficient to support finding of appeal board that plaintiffs were all members in different departments of the same establishment, where it appears some were employed in production of parts and others on main production line of automobile factory (PA 1936 [Ex Sess], No 1, § 29, as amended by PA 1943, No 246).

6. SAME—FINDING OF APPEAL BOARD—REVERSAL BY CIRCUIT COURT—EVIDENCE.
   In order that a circuit court may reverse the decision of the appeal board of the unemployment compensation commission, the court must find that the decision of the board was contrary to the great weight of evidence (CL 1948, § 421.38).

7. SAME—RESUMPTION OF PRODUCTION AFTER PARTIAL TEMPORARY LAYOFF—EVIDENCE.
   Testimony of intervening automobile manufacturer's production manager as to when production would have been resumed but for general strike which had been called after partial temporary layoff because of frames supplier's inability to supply frames *held,* not objectionable as speculative and a conclusion.

8. SAME—RESUMPTION OF PRODUCTION—FINDING OF APPEAL BOARD—GREAT WEIGHT OF EVIDENCE.
   Where the testimony of intervening automobile manufacturer's production manager together with other testimony presented was sufficient to warrant the appeal board in finding that intervenor would have resumed production after temporary

layoff of certain employees because of lack of frames, but for general strike which had been called after such employees had been laid off, and no testimony is shown that any of the plaintiff claimants would have been left out of the recall to work for reasons peculiar to those individuals, such finding was not contrary to the great weight of the evidence (CL 1948, § 421.38).

9. SAME—COSTS—PUBLIC QUESTION.

No costs are awarded in proceeding to recover unemployment compensation benefits where none are allowed for period after operations would have been resumed by employer after partial temporary layoff of employees but for general strike which had been called after commencement of layoff, a question of public importance being involved (PA 1936 [Ex Sess], No 1, § 29, as amended by PA 1943, No 246; CL 1948, § 421.38).

Appeal from Genesee; Elliott (Philip), J. Submitted April 5, 1949. (Docket No. 11, Calendar No. 44,066.) Decided June 29, 1949.

Certiorari by Donald W. Clapp and others to review order of Appeal Board of Michigan Unemployment Compensation Commission denying their compensation after December 18, 1945. Judgment reversing order of board and granting compensation. Intervening defendant General Motors Corporation appeals. Reversed and remanded.

*Harold A. Cranefield* and *A. L. Zwerdling* (*Irving J. Levy,* of counsel), for plaintiffs.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Laurence A. Price* and *Edward Coughlin,* Assistants Attorney General, for Michigan Unemployment Compensation Commission.

*Henry M. Hogan* (*Justin L. Schaffer,* of counsel), for intervenor General Motors Corporation.

REID, J.   Intervenor and appellant General Motors Corporation appeals from an order of the circuit court reversing a finding and award by the appeal board of the Michigan unemployment compensation commission.   Several employees of appellant corporation filed claims (involved on this appeal) for unemployment compensation and such claimants are hereinafter, for convenience, referred to as plaintiffs.   For convenience, the appellant corporation is referred to as General Motors.

Appellant's statement of the question involved is substantially as follows:   Was the finding of fact of the appeal board of the Michigan unemployment compensation commission that the unemployment of plaintiffs, subsequent to December 18, 1945, was caused by a labor dispute in which plaintiffs were involved, contrary to the great weight of the evidence so as to be subject to reversal by the circuit court pursuant to CL 1948, § 421.38 (Stat Ann 1947 Cum Supp § 17.540)?

General Motors functions through several unincorporated divisions, 2 of which are Buick Motor Division and Fisher Body Division.   Buick Motor Division has its plants and offices at Flint, Michigan. Fisher Body Division operates its plant No. 1 at Flint.   All plaintiffs are employees of General Motors in either Buick Motor Division or Fisher Body Division, plant No. 1.

All the frames for Buick automobiles are manufactured by Midland Steel Products Company, located at Cleveland, Ohio.   The frames are shipped by rail to Flint, arriving in Flint the third day after shipment.   When need is urgent, the frames are shipped by truck from Cleveland and arrive the following day in Flint.

Midland Steel Products Company resumed production for peacetime purposes on September 25, 1945, and shortly thereafter encountered a slowdown

on its assembly line assembling Buick frames. During the period between September 25, 1945 and November 1, 1945, Midland Steel Products Company was never able to produce the number of frames ordered by Buick Motor Division.

On November 1, 1945, Midland Steel Products Company notified Buick Motor Division that because of labor difficulties, production of Buick frames would be discontinued until such labor difficulties were adjusted. On each day thereafter Buick contacted Midland Steel requesting resumption of production of Buick frames.

Because of lack of frames, Buick had to discontinue operation of its main production line after November 14, 1945, and it was necessary to discontinue or curtail operations in other departments whose functions were dependent upon the operation of Buick's main assembly line, by which the Fisher Body Division, plant No. 1, became affected. The shortage of frames was expected to be brief. The main assembly line of Buick Motor Division was left filled with frames in order that production could be resumed without delay upon resumption of supply of frames.

Because of this temporary shutdown, approximately 1,360 employees whose work was affected by the frame shortage, were sent home by Buick Motor Division, with instructions to watch for newspaper or radio announcements for a recall to work. The employees who were thus sent home were retained on the active employment rolls; they were not given a "K" release by the personnel department as in the case of an ordinary layoff due to a reduction in force, and were permitted to keep their badges.

On November 12, 1945, Fisher Body Division, plant No. 1, was informed by Buick Motor Division that Buick could not continue the operation of its assembly line due to a shortage of frames. Because

Buick Motor Division could not continue to receive automobile bodies unless the main assembly line was in operation, it became necessary for Fisher Body Division, plant No. 1, to shut down its assembly line at the end of the first shift on November 13, 1945. The paint, trim and final assembly departments of Fisher Body Division, plant No. 1, were shut down on November 14, 1945, and as a result, 1,660 workers out of a total of 3,879 hourly rated employees at Fisher Body Division, plant No. 1, were temporarily sent home, with instructions to watch the newspapers and listen to the radio for notice of resumption of operations. Also, notice was posted on bulletin boards of the Fisher Body plant as follows:    .

"Present indications are that operations will be resumed in about one week. Notice of resumption of operations will be broadcast to employees by radio (WFDF) and local newspaper announcements."

All employees who were thus sent home because of the temporary shutdown were retained on the active employment rolls and they were given no formal release as in the case of a layoff due to reduction in working force.

In all, approximately 3,500 employees of General Motors were affected by the inability of Buick Motor Division to obtain frames from Midland Steel.

On November 21, 1945, the UAW–CIO called a strike at the various plants of General Motors, including Buick Motor Division and Fisher Body Division, plant No. 1. This union was certified by the national labor relations board as the exclusive bargaining agent for the production and maintenance employees of both Buick Motor Division and Fisher Body Division, plant No. 1, including the claimants, who were either members of the union or members of the bargaining unit represented by the UAW–CIO. The strike was called by the union when the

union's demand for a 30 per cent. increase in wages was not met by General Motors. The labor dispute was terminated on or about March 13, 1946.

On December 13, 1945, Midland Steel Products Company resumed production of Buick automobile frames. At that time Midland Steel Products Company had 13 Buick frames available for shipment. On December 13, 1945, Midland Steel manufactured 125 frames for Buick and on December 14, 1945, it manufactured 165 frames for Buick. However, because of the strike, above referred to, and the inability of Buick Motor Division to receive the frames at that particular time, the frames were not shipped to the Buick plant at Flint. Midland Steel continued to manufacture frames for Buick with daily production in excess of the number of frames which were produced prior to November 1, 1945. By Buick's instructions, such frames were stored by Midland Steel for the account of Buick.

By January 3, 1945, Midland Steel had stored 3,000 Buick frames, which used their maximum storage capacity. They therefore on that date began to ship automobile frames to Flint for Buick, by consigning the frames to a third party designated by Buick Motor Division. These frames were stored at Flint for the account of Buick. They were not delivered at the Buick plant for the reason that the plant was strikebound and there were no employees in the plant to receive and unload the frames.

By December 17, 1945, Buick could have had 303 frames in its plant, and the frames produced by Midland Steel on December 17, 1945, could have been available at the Buick plant on December 19, 1945. Therefore, appellant claims (and the finding of the appeal board found such claim correct) that appellant would have set December 18, 1945, as the date for the resumption of production at Buick and all employees who were temporarily sent home between

November 13 and November 20, 1945, would have been called to work on that day were it not for the labor dispute prevailing.

We are not concerned with the allowance of unemployment compensation between November 14, 1945, when Buick Motor Division stopped its main production lines for want of frames, and December 18, 1945, when Buick claims it was ready to resume and would have resumed except for the strike. Award for such period, November 14th to December 18th, is not questioned. The work stoppage during that period was due to a strike in progress at Midland Steel, in which strike the employees of Buick and Fisher Body Division, plant No. 1, were not involved. There is left for our consideration the matter of claimed compensation from December 18, 1945, to March 13, 1946, on which latter date the strike at the General Motors plants was ended. General Motors claims that on December 18, 1945, they were able to resume production and would have done so, had plaintiffs not been out on strike. Plaintiffs claim that, even though a strike condition did exist, there is not sufficient nor competent proof that General Motors (Buick Motor Division) would have resumed production on December 18, 1945.

General Motors on December 10, 1945, cancelled its bargaining agreement with the UAW–CIO. Plaintiffs contend that such cancellation, which was after the strike had been called on November 21, 1945, had the effect of indicating intervenor's intention not to re-employ plaintiffs. This contention cannot be sustained for the reason that a strike (which gave rise to the cancellation) was already in existence at the time of the cancellation and still in progress. Further, the cancellation in question did not prevent General Motors from calling its employees back to work if they had been willing to return. Plaintiffs were bound by the disqualifying provisions

of subdivision (c) of section 29 of the unemployment compensation act, PA 1936 (Ex Sess), No 1, as amended by PA 1943, No 246 (CLS 1945, § 8485-69 [Stat Ann 1945 Cum Supp § 17.531]), hereinafter quoted. It is to be noted that the employer at no time notified any of the employees of any unwillingness to recall them to work. Under the testimony in this case, the appeal board was justified in finding that the fact that the plant was shut down was entirely due to the strike. So far as concerns claims for unemployment compensation, as long as the strike condition existed and there was no indication on the part of the strikers that the strike was over, the employer was not put to the duty of going through the formality of recalling the employees. There was testimony to warrant a finding that the existing conditions indicated the futility of attempting such recall.

Section 29 of the Michigan unemployment compensation act, PA 1936 (Ex Sess), No 1, as amended by PA 1943, No 246 (CLS 1945, § 8485-69, Stat Ann 1945 Cum Supp § 17.531), provides in part as follows:

"An individual shall be disqualified for benefits: * * *

"(c) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed: Provided, however, That no individual shall be disqualified under this section if he shall establish that he is not directly involved in such dispute. For the purpose of this section, no individuals shall be deemed to be directly involved in a labor dispute unless it is established:

"(1) That, at the time or in the course of a labor dispute in the establishment in which he was then employed, he shall in concert with 1 or more other

employees have voluntarily stopped working other than at the direction of his employer, or

"(2)  That he is participating in or financing or directly interested in the labor dispute which caused the stoppage of work: Provided, however, That the payment of regular union dues shall not be construed as financing a labor dispute within the meaning of this subsection, or

"(3)  That at any time, there being no labor dispute in the establishment or department in which he was employed he shall have voluntarily stopped working, other than at the direction of his employer, in sympathy with employees in some other establishment or department in which labor dispute was then in progress.

"(4)  That at any time, there being no labor dispute in the particular establishment or department or unit in which he was then employed, he shall have become unemployed because of a stoppage of work which was directly caused in his particular establishment or department or unit by and solely because of a stoppage of work due to a labor dispute which was then in progress in some other establishment or department or unit of the same employing unit by whom he was then employed."

The burden of proving their eligibility to compensation benefits is on the plaintiffs. *Phillips* v. *Unemployment Compensation Commission* (syllabus 7), 323 Mich 188.

Plaintiffs were all employees of General Motors, they were all engaged in producing parts for or in carrying on production for the manufacture of Buick cars. They were all members of the same union which ordered the strike. There is sufficient showing in this record from which the appeal board could find that plaintiffs were all members in different departments of the same establishment. See *Chrysler Corp.* v. *Smith,* 297 Mich 438 (135 ALR

900), and *Abbott* v. *Unemployment Compensation Commission,* 323 Mich 32.

After the layoff consequent upon the shortage of frames, certain employees continued to work until a general strike of all employees in this controversy was ordered. After the calling of the general strike, resumption of production was impossible as long as the general strike continued.

Appellant claims (and the finding of the appeal board is in accordance with such claim) that the reason that no order for resumption of production was issued was that frames could not be delivered into the plant due to the strike, and that it would have been impossible to resume production at either the Buick or Fisher plants unless the employees who went on strike on November 21, 1945, returned to work.

By a referee's decision dated April 24, 1946, benefits were granted to the claimants herein for the entire period of their unemployment, including the period of stoppage of work due to the general strike. Appellant General Motors took an appeal from this decision and on January 30, 1947, the appeal board of the Michigan unemployment compensation commission adopted without alteration the findings of fact by the referee so far as the findings are quoted in the appeal board's decision, and the appeal board rendered its decision modifying the decision of the referee and holding, "that the claimants involved herein will be disqualified for unemployment benefits under the provisions of section 29 (c) of the act from December 18, 1945, and for the duration of their unemployment due to the stoppage of work existing because of the labor dispute in the establishment in which they were last employed."

On the application of the plaintiffs, a writ of certiorari was issued by the circuit court on February

14, 1947, and on September 9, 1947, judgment by the circuit court was entered for the plaintiffs.

The circuit court held that the finding of fact by the appeal board to the effect that the unemployment of plaintiffs, subsequent to December 18, 1945, was not caused by the lack of work but rather was caused by the labor dispute (strike), was contrary to the great weight of the evidence as presented at the hearing before the referee, and the circuit court allowed benefits to plaintiffs for the entire period of their unemployment, thereby reversing the decision of the appeal board. Under the statute, it was necessary for the circuit judge, in order to reverse the decision of the appeal board, to find that the decision was contrary to the great weight of evidence. (CL 1948, § 421.38 [Stat Ann 1947 Cum Supp § 17.540].)

The important question in this case turns upon the testimony of Robert M. Wagner, general production manager for Buick. Mr. Wagner testified that because Midland Steel had 303 Buick frames available at the close of business on December 14, 1945, and because there was a condition of readiness in both General Motors plants, and General Motors was assured of a continued supply of parts necessary for resumption of production, he, Mr. Wagner, would have made the recommendation for the resumption of production on December 18, 1945. The circuit judge ruled that the testimony of Wagner to the effect that he would have set December 18th is speculative, is a conclusion and cannot be considered in determining the facts in this case. Mr. Wagner testified on direct examination as follows:

"As head of the production department it is my job to first build up the master car building schedule. That is done, of course, in conjunction with the sales department and the general manager. From that schedule it is my job to break down individual schedules on all components, whether manufactured by us

or brought in from the outside. In case of the parts which we manufacture, I furnish the various factories and departments their schedules of operations. In the case of those parts furnished from outside of the plant the schedules are turned over to the purchasing department. After the material is purchased and brought in to the factory, my department again picks it up and handles the receipt, storage and movement of material throughout the factories. * * *

"*Q.* What date would you have set for resumption of production?

"*A.* December 18th.

"*Q.* What factors, briefly, would determine December 18th as the date for resumption of production?

"*A.* By December 17th we could have had 303 frames in our plant, the frames produced on the 17th could have been made available not later than Wednesday morning.

"*Referee:* Wednesday morning, what date?

"*A.* Wednesday would have been the 19th. They [we] were apparently producing at the time of the shut down about 200 cars a day. In other words, we would have had—we produced 200 cars on the first day, we would have had 100 frames to start the following morning, then the frames shipped on Monday would have been there before that 100 frames would have been exhausted.

"*Q.* Mr. Wagner, did you give such an order for resumption of production?

"*A.* I did not.

"*Q.* Why not?

"*A.* Because I couldn't get frames in on account of the strike.

"*Q.* If you had ordered a resumption of production on the 18th, would it have been a complete resumption of production for all factories?

"*A.* It would have been an order for a resumption of all factories."

Moreover, we note the following from the testimony of Mr. Wagner on *cross-examination by plaintiffs' attorney:*

"*Q.* However, there would be other factors involved in your arriving at a decision other than frames, would there not?

"*A.* There might have been, yes; I knew we were in shape to overcome any other difficulties.  *  *  *

"*Q.* Now, the frame has been testified to here as a very essential part in the production of an automobile. That being the case, and particularly since you were so close to the beginning of operations, would you not have made a check among the superintendents to determine whether or not they were ready to proceed with production in the event that frames were available?

"*A.* It wouldn't have been necessary.

"*Q.* That is on the assumption that they are ready to shoot, is that correct?

"*A.* It isn't an assumption.

"*Q.* Well, you are stating then that it is your belief that they did have sufficient parts and they were ready to proceed with production provided that you had frames, is that correct?

"*A.* That is right.

"*Q.* But in any case, I understood your testimony that you would have called a superintendent's meeting?

"*A.* Yes, that is right.

"*Q.* Now, if what you say is correct, that is, that they were ready to go—they were waiting for frames—what would have been the purpose of a superintendent's meeting?

"*A.* I believe I explained that. To notify them of our plans, enable them to call back the individuals, to frame the notices for the papers and the radio announcements.

"*Q.* And would that have been the sole purpose?

"*A.* That is right.  *  *  *

"*Q.* Before you make your decision to resume production as you said, on the 19th [18th], would you

have called in the superintendent or the factory manager of Fisher Body?

"*A.* We would certainly have notified them.

"*Q.* Would they be at this meeting that you talked about?

"*A.* No.

"*Q.* Before the meeting would you have contacted them to determine what their situation was?

"*A.* Certainly.

"*Q.* Why would you do that?

"*A.* I am afraid that I spoke too fast. I wouldn't have had to contact them to know what their situation was. I have been in contact constantly with him [them]; I would simply have had to notify them that we were going to call our men in and must have bodies by a certain date."

Plaintiffs argue that there is no showing that all the plaintiffs would have been recalled on December 18, 1945. However, Mr. Wagner testified in reference to December 18, 1945:

"*Q.* You would have called back approximately 3,500 people with only the assurance that you could give them 6 days work, isn't that right?

"*A.* That is true from what frames we actually had on hand."

Mr. Belbin, assistant personnel director of Buick Motor Division, testified:

"*Q.* On the resumption of production, would the call back also apply to the group? [referring to Buick Motor Division]

"*A.* That is right."

We find, after considering all of the testimony in the case, that the appeal board had before it sufficient competent testimony to warrant the finding that all the plaintiffs would have been called back upon resumption of activities on December 18, 1945, had there been no strike. Further, no testimony is

quoted by plaintiffs to show that any one or more of plaintiffs would have been left out of the recall to work for reasons peculiar to those individuals.

The testimony of Mr. Wagner that he would have set the date of resumption at December 18, 1945, is not a mere speculation on his part. There is sufficient in the facts testified to, to warrant the appeal board in finding that such date would have been set. In the testimony of Mr. Wagner, including what is not quoted in this opinion, and in other testimony in the case, there are stated sufficient facts to indicate to the appeal board that December 18th would have been the date when resumption would have occurred if the strike had not then been in force.

We have had occasion to consider objections to the competency of the testimony of a production manager under circumstances giving more room for argument than exists in the instant case. See *Abbott v. Unemployment Compensation Commission, supra,* 47. The objection in the briefs in the instant case to the testimony of Mr. Wagner is not well taken.

We find that the decision by the appeal board is not contrary to the great weight of the evidence and accordingly, the decision of the appeal board must be affirmed.

The judgment of the circuit court is reversed and the cause remanded to the circuit court with instruction to remand the matter to the unemployment compensation commission to proceed with carrying out its award, as determined by the appeal board. No costs, a question of public importance being involved.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, DETHMERS, and CARR, JJ., concurred. BUTZEL, J., did not sit.