A. O. SMITH CORPORATION, Plaintiff-Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and others, Defendants-Respondents.

Supreme Court

*No. 76-436. Argued January 29, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 279.)

 

For the appellant there was a brief and oral argument by *Sigrid E. Dynek* of Milwaukee.

For respondent Department of Industry, Labor and Human Relations, the cause was argued by *James J. Pflasterer*, attorney, Job Service Division, with whom on the brief was *Uclair W. Brandt*, chief counsel.

██

HEFFERNAN, J. This is an appeal from a portion of a judgment which affirmed an order of the Department of Industry, Labor and Human Relations granting unemployment compensation benefits. The question is whether workers on an indefinite layoff status drawing unemployment compensation benefits who are recalled to work by their previous employer, but do not receive the recall notice until after a strike has commenced, have lost their employment because of a strike.

The controlling statute in sec. 108.04(10), Stats., which provides:

"(10) LABOR DISPUTE. An employe who has left (or partially or totally lost) his employment with an employing unit because of a strike or other bona fide labor dispute shall not be eligible for benefits from such (or any previous) employer's account for any week in which such strike or other bona fide labor dispute is in active progress in the establishment in which he is or was employed."

The trial judge reasoned that a worker on an indefinite layoff status had totally severed the previous employment relationship. He concluded:

"It necessarily follows that if no employer-employee relationship exists with respect to employees on indefinite layoff at the commencement of a strike in the establishment of their employer where they formerly were employed, and this layoff status continues during the strike, they have not lost any employment by reason of the strike within the meaning of sec. 108.04(10), Stats."

We conclude that the reasoning of the trial judge is correct and is supported by the facts of this case and by established law. We affirm.

The record shows that the employees were among 146 production workers who had been indefinitely laid off by the A. O. Smith Corporation prior to August 9, 1974. These employees were all members of the Smith Steel Workers DALU 19806, AFL–CIO. Employees of A. O. Smith were working under the provisions of a collective bargaining agreement which expired on July 31, 1974. Despite extensive contract negotiations, the union, on that date, told the company representatives that it was intending to recommend the rejection of the company's final offer and that the membership had authorized the union to call a strike.

The union membership voted on the company's final offer on August 6 and 7, 1974, and rejected it. The company was formally notified of the rejection, and the strike commenced at 12:01 a.m. on August 9, 1974.

While these procedures preliminary to calling the strike were under way, the company, on August 6, 1974, commenced to recall 55 of its indefinitely laid-off production workers. There is no claim by the union that the recall of laid-off workers was made in bad faith with the intention of terminating A. O. Smith's obligation to pay unemployment compensation.

It is conceded by the company that none of the employees received notice of recall prior to the actual commencement of the strike. It is also conceded that

employees who received recall notices and who reported to the company were told to disregard the recall letters and to report to work after the strike was over. The strike lasted until August 30, 1974.

The general rule determining eligibility for unemployment compensation where a worker is recalled to work is set forth in sec. 108.04(8)(af), Stats. 1973. That subsection provided that, when an employee fails to return to work with a former employer who has recalled him, he is ineligible for unemployment benefits for that week and thereafter until he has again been employed and reestablished eligibility. Failure to return to work, however, does not result in ineligibility if the failure to return to work is found to be for "good cause." Sec. 108.04(8)(af), Stats. 1973.

Sec. 108.04(9), Stats., provides that benefits will not be denied for refusing to accept "new work" under statutorily enumerated conditions. One of the conditions under which unemployment compensation benefits are not to be denied is when the employee refuses to accept "new work . . . if the position offered is vacant due directly to a strike, lockout or other labor dispute."

Under sec. 108.04(10), Stats., employees who lose their employment or leave their employment because of a strike or labor dispute in their place of employment are ineligible for unemployment compensation benefits for the weeks the strike is in progress. The purpose of this provision, as has been pointed out in numerous opinions of this court, is to protect the employer from financing a strike against him. Sec. 108.04(10) is applicable, however, only if the employees had an employer-employee relationship with A. O. Smith at the time they were recalled to work. If that relationship had been totally severed prior to the strike, they would not be ineligible to continue to receive benefits.

The status of the employees in this case and their eligibility to continued unemployment compensation is

substantially disposed of by this court's opinion in *Allen-Bradley Co. v. DILHR*, 58 Wis.2d 1, 205 N.W.2d 129 (1973). In that case the court was concerned with whether an indefinitely laid-off employee came within the protections of sec. 108.04(9)(b), Stats. That subsection permits a worker to reject employment and still retain his eligibility for unemployment compensation if the wages, hours, or other conditions of "new work" are substantially less favorable than those prevailing for similar work in the locality. The court held that the term, "new work," did not necessarily presuppose a job applicant going to a prospective employer for an entirely new job. Rather, it accepted the rationale of the Department of Industry, Labor and Human Relations that, where an employee has been indefinitely laid off, a recall by a previous employer should be considered "new work." The court stated:

". . . in the light of the purpose, intent and wording of the labor standards provisions of sec. 108.04(9), Stats., there is no necessity for limiting its applicability to new job applicants, and denying its protections to indefinitely laid-off employees recalled to work. In such situations, the work is new even though the worker is not." *Allen-Bradley, supra* at 6.

The implication of the *Allen-Bradley* opinion is that indefinitely laid-off workers are to be considered as having no employer-employee relationship with the recalling company, even though they had, prior to the indefinite layoff, been parties to such relationship.

*Allen-Bradley*, although its reasoning leads to that conclusion, does not expressly so hold. Nevertheless, an uninterrupted series of administratively determined unemployment compensation cases has expressly reached that result. These cases are set forth in the 1960 Digest of Wisconsin U.C. Cases at MS–625, Employer-Employee Relationship, pp. 196 ff.

In the digest of MS–627, 50–C–528, it is reported that an employee was laid off because of a coal strike, but he was informed he would be recalled to work. The Commission held that, when work and payment of wages cease, the presumption is that a total severance of the employer-employee relationship has occurred. However, where there was "evidence that at the time of layoff there existed an assurance, expressed or clearly implied by circumstances, that work and wages would be resumed at an ascertainable time in the not too distant future," the relationship continues. The Commission said:

"Conversely stated, for the purposes of the unemployment compensation act, a layoff for an indefinite period gives rise to the presumption that the employer-employee relationship has been totally severed."

Similar language is found in MS–627, 53–A–1489, p. 199, and in Digest of U.C. Cases, 1970 Supplement, LD–505, 67–A–2832(C), p. 42.

It is apparent that the administrative construction given these statutes by the Department, and by the preceding Commission, uniformly reached the result that an indefinite layoff severed the employer-employee relationship.

This practical administrative construction of a statute by a department charged with the task of applying it is entitled to great weight and will not be set aside by this court unless it can be said that the construction is clearly contrary to the legislative intent. *Trczyniewski v. Milwaukee,* 15 Wis.2d 236, 240, 112 N.W.2d 725 (1961). In *Allen-Bradley, supra,* we expressed our agreement with the rationale of these administrative decisions.

It is also clear that this administrative construction fully comports with the purpose of the law relating to

protection of labor standards set forth in sec. 108.04(9), Stats.

The legislative policy of sec. 108.04(10), Stats., is discussed in *Marathon Electric Mfg. Corp. v. Industrial Comm.*, 269 Wis. 394, 69 N.W.2d 573, 70 N.W.2d 576 (1955). In *Marathon* the court held that the labor-dispute disqualification of sec. 108.04(10) terminates in respect to employees who are unequivocally discharged during a strike and that such employees are eligible for unemployment compensation. The court explained that the employer-employee relationship ordinarily continues to exist during a strike but that status is terminated by an unequivocal discharge. Sec. 108.04(10), the court explained, applies only to those persons still retaining an employee status who are out of work due to a bona fide labor dispute and, in respect to them, there is a complete suspension of unemployment compensation benefits during the period that the dispute remains in progress. In respect to the policy function served by these statutes, the court commented:

"This construction of sec. 108.04(10), Stats., is in keeping with the legislative policy underlying its enactment of protecting employers against having to finance a strike against themselves . . . . In other words, it seems to us that one of the purposes of sec. 108.04(10) is to preserve the *status quo* during the course of the labor dispute so that at its cessation the parties thereto stand in the same relation to each other as at its beginning in so far as payment of benefits under the act are concerned." (at 408)

We conclude that the administrative construction adopted by the Department is consistent with the underlying legislative and social policies of neither requiring an employer to finance a strike against itself nor permitting an employer to disrupt the status quo of individuals who are in an indefinite layoff status. The

decisions of this court have been consistent in supporting these legislative and social policies.

The employer relies on cases from other jurisdictions, particularly, *Clapp v. Unemployment Compensation Comm.,* 325 Mich. 212, 38 N.W.2d 325 (1949). The trial judge in the instant case considered *Clapp* and expressed doubt as to its correctness. He pointed out, however, that, at the time the General Motors workers in *Clapp* were laid off, it was understood that the layoff was temporary and that notices of recall were to be placed in the news media as soon as materials were available for work to resume. If the facts in *Clapp* are so viewed, even under Wisconsin law it would be clear that the General Motors workers were not in an indefinite-layoff status, which would terminate their employment relationship. In that light, *Clapp* is consistent with Wisconsin law and the administrative construction the Department has given the statutes.

Additionally, *Clapp* states that, under Michigan law, the burden of proving eligibility is on the employee. *Clapp,* at 221. In Wisconsin, the opposite is true. The claimant is presumed to be eligible, and the party resisting payment must prove disqualification. *Kansas City Star Co. v. ILHR Dept.,* 60 Wis.2d 591, 602, 211 N.W.2d 488 (1973). Hence, *Clapp* on its facts is distinguishable from the instant case; and Wisconsin law, in respect to the presumption of eligibility, is contrary to the Michigan law relied upon in *Clapp.* As A. O. Smith states in its brief, *Clapp* has significance where employees are laid off for a definite period. We conclude, however, it has little relevance to the present case, where the layoff was for an indefinite period.

Accordingly, we conclude that the employees whose benefits are in dispute neither left their employment nor totally or partially lost their employment, because, under

established Wisconsin law, no employment relationship existed following their layoff for an indefinite period.

Additionally, we point out that the record does not show that positions offered these employees at the time of recall were vacant due to a strike or labor dispute. Whatever the original intent of the employer might have been, it appears that those employees who responded to the recall were told that, because of the labor dispute, the position was no longer vacant. Hence, it cannot be said that eligibility of the workers for continued unemployment compensation need be predicated upon sec. 108.04 (9) (a), Stats. The company in effect set aside its recall. Therefore, we need not consider the question that would arise under circumstances where a position offered—"new work"—was vacant because of a strike and the worker refused to accept it. That simply did not occur under the record as we see it.

The argument of the company is that the positions would have been vacant except for the strike. Whether that is true or not is irrelevant. The employees, as indefinitely laid-off workers, had no relationship with A. O. Smith and, accordingly, under the statutes could not partially or totally lose employment. They continued to be eligible for benefits.

*By the Court.*—Judgment affirmed.