**DOLE HAWAII DIVISION–CASTLE & COOKE, INC.,** Appellant–Appellee, v. **MARIO R. RAMIL,** Director, Department of Labor and Industrial Relations for the State of Hawaii, Appellee–Appellee, and **J. AH YOU, R. ALESNA, V. ATU, R. J. AUSTRIA, S. BALISACAN, D. BARADI, F. CABRAL, M. CANTORNA, D. CASTILLO, ALDEN CAYETANO, ALLEN CAYETANO, B. FAGARAGAN, L. FIESTA, L. GANDIA, A. GARANIA, A. GO, L. HILL, F. INGAN, S. IWANAGA, M. KAKIUCHI, J. KALAOLA, S. KEKOA, W. L. KOO, W. KUHNS, C. KUMUKAHI, A. LAKALO, F. LAMOYA, F. MADEIRA, R. MAR-TINEZ, R. NAHOLOWAA, J. NANA, W. OKAMOTO, P. OKI, H. O. PARK, B. PASCUAL, E. RAGASA, R. RAYMUNDO, P. ROSA, J. SATO, K. SWART, R. TORRES, W. TUGADE, M. VALENTIN, S. S. WISE** and **D. YOKOI,** Appellees–Appellants

NO. 13981

(CIV. NO. 88–3716)

JUNE 28, 1990

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

420

## OPINION OF THE COURT BY MOON, J.

This is an appeal by employees (Claimants) of Dole Hawaii Division–Castle & Cooke, Inc. (Dole) from a circuit court order reversing an Employment Security Appeals Referee's decision granting unemployment compensation benefits for the period of a labor strike at Dole's premises. We reverse the trial court's order and hold that the Claimants are entitled to the benefits in question.

### I.

Claimants were employed at Dole's Honolulu can manufacturing plant. During December 1984 and January 1985, Claimants were laid off due to lack of work caused in part by the shutdown of the local tuna cannery to which Dole supplied cans. Claimants began receiving unemployment compensation benefits. As members of the International Longshoremen's and Warehousemen's Union, Local 142 (Union), Claimants were covered by a collective bargaining agreement (bargaining agreement) which expired on

January 31, 1985. Pursuant to the terms of the bargaining agreement, in the event of layoffs, Claimants retained seniority rights and were required to call Dole on a weekly basis to determine if work was available.

On February 5, 1985 in anticipation of a labor strike which was to commence on February 6th, Dole issued Claimants recall offers to work. Instead of reporting to work, Claimants participated in the Union's picket line. The strike ended on May 16, 1985 and the Claimants returned to work. However, in December 1985, the continuing effect of lost orders from the closure of the tuna cannery caused Dole again to lay off thirty (30) of the forty–four (44) Claimants, this time on a permanent basis.

## II.

The Department of Labor and Industrial Relations (DLIR) denied Claimants' unemployment benefits for the period of the strike. At the hearing before the Employment Security Appeals Referee (Referee) evidence submitted included a stipulation by the parties to certain facts and conclusions of law.[1] The Referee

---

1. On January 31, 1985, the collective bargaining agreement between the International Longshoremen's and Warehousemen's Union Local 142 (hereinafter "Union") and the Dole Company Honolulu Can Plant (hereinafter "Employer") expired. . . . On February 6, 1985, the Union commenced a strike against the Employer after negotiations for a new collective bargaining agreement reached an impasse. That strike was a controversy concerning terms, tenure, or conditions of employment and therefore constituted a "labor dispute" as that term is used in the Hawaii Employment Security Law.

2. The Dole Company Honolulu Can Plant is located at 650 Iwilei Road and is an "establishment" as that term is used in the Hawaii Employment Security Law.

3. The primary business activity of the Employer is the manufacturing of cans. The production of cans for pineapple products accounts for approximately 95 percent of the Employer's business operations. The balance of its

reversed on the grounds that the "strikebreaker" provision of the Hawaii Employment Security Law (HESL), Hawaii Revised Statutes (HRS) § 383–30(3)(B)(i),[2] allowed Claimants to reject the recall offers to work without loss of their unemployment benefits based on the finding that said offers were for "new work" vacant due directly to the strike. The circuit court reversed holding that the strikebreaker provision was inapplicable and the Claimants were disqualified under the "labor dispute" provision, HRS § 383–30(4).[3]

operations, prior to the strike, is the manufacturing of macadamia nut cans, juice cans, and tuna cans.

4. The above–mentioned strike continued throughout the period of February 6, 1985 to May 16, 1985. On February 6, 1985, the Union set up picket lines at the Employer's location. None of the Union members who were employees of the Employer crossed the picket lines. These picket lines continued for the duration of the strike.

5. During the entire period of the strike, all can production ceased as did the delivery of cans for customers and the sale of cans. A "stoppage of work," as that term is used in the Hawaii Employment Security Law, existed during the entire duration of the strike in that there was a substantial curtailment of the business activities at the Employer's establishment.

6. Up to and on January 14, 1985, [Claimants] were laid off by the Employer. The nature of that layoff is to be litigated at hearing.

7. On February 6, 1985, [Claimants], who were employees of the Employer and Union members, were contacted by the Employer by telephone and informed that there was work available for [Claimants] and that they were to report to work on February 6, 1985. A form letter confirming their recall to work was mailed to each of the [Claimants] on February 6, 1985.

[2] HRS § 383–30(3)(B) provides (emphasis added):

(B) Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept *new work* under any of the following conditions:

(i) If the position offered is vacant due directly to a strike, lockout, or other labor dispute[.]

[3] HRS § 383–30(4) provides:

(4) Labor dispute. For any week with respect to which it is found that the individual's unemployment is due to a stoppage of work which exists

## III.

The law is well–settled in this jurisdiction that in an appeal from a circuit court's review of an administrative decision the appellate court will utilize identical standards applied by the circuit court. The clearly erroneous standard governs an agency's findings of fact whereas, the courts may freely review an agency's conclusions of law. *International Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 316, 322, 713 P.2d 943, 950 (1986); *Camara v. Agsalud*, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984).

Where both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency. *Camara*, 67 Haw. at 216, 685 P.2d at 797.

## IV.

Under the HESL, HRS Chapter 383, an individual is eligible to receive unemployment benefits unless disqualified for any one

---

because of a labor dispute at the factory, establishment or other premises at which the individual is or was last employed; provided that this paragraph shall not apply if it is shown that:

(A) The individual is not participating in or directly interested in the labor dispute which caused the stoppage of work; and

(B) The individual does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or directly interested in the dispute; provided that if in any case separate branches of work, which are commonly conducted as separate businesses in separate premises, are conducted in separate departments of the same premises, each such department shall, for the purpose of this paragraph, be deemed to be a separate factory, establishment or other premises.

of six (6) grounds set forth in HRS § 383–30. Where an employer seeks to disqualify an employee from unemployment benefits under HRS § 383–30, "'the [said] employer has the burden of proving the requisite facts to bring the employee within the statutory deprivation of benefits.'" *National Tire of Hawaii, Ltd. v. Kauffman*, 58 Haw. 265, 272, 567 P.2d 1233, 1238 (1977) (quoting *Adelsman v. Northwest Airlines, Inc.*, 267 Minn. 116, 123, 125 N.W.2d 444, 449 (1963)).

Dole contends that when Claimants rejected the recall offers to work, lack of work ceased to be the basis for their unemployment. The cause of said unemployment then became the stoppage of work due to the labor dispute thereby disqualifying them from unemployment benefits during the strike period under HRS § 383–30(4).

Claimants admit they rejected the recall to work due to the labor dispute resulting in the stoppage of work, however, Claimants rely upon the exemption from disqualification set forth in the strikebreaker provision.

Claimants maintain and we agree that the Referee was correct in determining that the recall offers to work were for "new work" based on the finding that their layoffs were for an indefinite period which effectively terminated their employer–employee relationship. Therefore, Claimants were justified in refusing the recalls to work for positions made vacant due to the labor dispute without being disqualified under the labor dispute provision.

In construing the term "new work," the Referee gave great weight to the interpretation contained in the United States Department of Labor Unemployment Insurance Program Letter No. 984 (1968) (UIPL No. 984) as did the California Court of Appeals in *Campos v. California Employment Development Department*, 132 Cal. App. 3d 961, 183 Cal. Rptr. 637 (1982), when considering the problem of interpreting "new work" within the meaning of the California strikebreaker provision which is almost identical to HRS § 383–30(3)(B)(i). The California court stated:

The United States Department of Labor is the federal agency responsible for ensuring that state unemployment laws comply with the mandatory federal criteria set out by Congress. (26 U.S.C. § 3304; 42 U.S.C. § 503.) Since section 1259 [strikebreaker provision] of the California Unemployment Insurance Code is mandated by the federal statute, interpretations of the federal statute by federal agencies such as the Department of Labor, although not binding on the courts, are entitled to great weight.

*Id.* at 966, 183 Cal. Rptr. at 640 (citation omitted). *See also International Bhd. of Elec. Workers, Local 1357*, 68 Haw. at 329 n.16, 713 P.2d at 954 n.16 (where this court recognized the persuasive authority of the United States Labor Department's interpretive guidelines including an unemployment compensation program letter).

The California court further noted that notwithstanding the fact that UIPL No. 984's interpretation of "new work" was within the context of a different section of the Federal Unemployment Tax Act,[4] the term must be construed consistently. *Campos*, 132 Cal. App. 3d at 967, 183 Cal. Rptr. at 641. *See Gaspro, Ltd. v. Labor and Indus. Relations Comm'ns*, 46 Haw. 164, 172, 377 P.2d 932, 936 (1962) (where the phrase "left his work voluntarily" contained in separate sections under HESL were "presumed to be used in the same sense throughout.")

UIPL No. 984 states:

[A]n offer of new work includes . . . an offer of re-employment to an unemployed individual by his last (or

---

[4]UIPL No. 984 interpreted the phrase "new work" as used in 26 U.S.C. § 3304(a)(5)(B), the counterpart of HRS § 383–30(3)(A), referred to as the "labor standards provision." The situation concerned the application of the term "new work" to workers whose current employers offered new positions under less favorable working conditions.

any other) employer with whom he does not have a contract of employment at the time the offer is made . . . .

. . . .

. . . The question is whether the offer of re-employment is an offer of a new contract of employment. *If the worker . . . was discharged or laid off indefinitely, the existing contract of employment was thereby terminated. An indefinite layoff, that is, a layoff for an indefinite period with no fixed or determined date of recall, is the equivalent of a discharge.* . . .

. . . There is not, however, a termination of the existing contract when the worker is given . . . a short–term layoff for a definite period.

UIPL No. 984 at 3–4 (emphasis added).

The record supports the Referee's determination that Claimants were laid off for an indefinite period due to unforeseen economic circumstances and as a result had only a mere expectation of future employment with Dole. The evidence is clear that the closure of the tuna cannery significantly contributed to the layoffs due to the reduction of orders and in turn the lack of work. At the time of the layoffs, there was no reasonable certainty as to when the business would resume to such a level as to warrant recalls to Claimants. It is undisputed that but for the strike and resulting job vacancies, Claimants would not have received the recall offers to work. After the strike ended, Claimants were recalled and did return to work, an event which could not have been predicted at the time of the layoffs. Dole produced evidence of new orders received in May, 1985 (the month the strike ended) and during the following months. However, the significance of such new orders and the influence it may have had on the need to increase the work force by recalling Claimants is not evident. The record reflects that the probable reason Claimants were recalled at the end of the strike was to make up for production loss caused by the complete work stoppage during the strike. The economic circumstances created

by the tuna cannery's closure essentially remained unchanged resulting in permanent layoffs of approximately two–thirds of the Claimants in December 1985.

There is no Hawaii case dealing with this issue, however, Claimants cite several out–of–state cases which establish the rule that an indefinite layoff with no reasonably ascertainable date of recall is a termination of employment and thus a recall offer to work is "new work." Under such circumstances, if the positions offered were vacant due directly to a strike, said positions may be rejected without loss of unemployment benefits. The appellate courts in these cases recognize that the strikebreaker provision clearly manifests the legislative intent that unemployed workers should not be turned into strikebreakers or suffer a denial of unemployment benefits. This policy is consistent with the understanding that "[t]he unemployment compensation statute was enacted for the beneficent and humane purpose of relieving the stress of econ[o]mic insecurity due to unemployment. It should therefore be liberally construed to promote the intended legislative policy." *Camara*, 67 Haw. at 216–17, 685 P.2d at 797 (citations omitted).

In *Campos*, claimants were employees of frozen food processing plants on a seasonal basis with the number of workers fluctuating throughout the year on the basis of crop availability. They were laid off without being given a specific time to return to work. A strike was called and shortly thereafter the employer sent out recall offers to replace strikers which claimants rejected. The court stated that "where the employees have no contractual right to recall within any specified time period, the better approach is to treat such layoffs as indefinite, thereby terminating any employment relationship consistent with Department of Labor Program Letter 984." 132 Cal. App. 3d at 975–76, 183 Cal. Rptr. at 645. The court held the strikebreaker provision applicable and therefore the recall offers to work were for "new work" vacant due to a labor dispute

which could be refused without resulting in disqualification from benefits. *Id.*

Similarly, in *A.O. Smith Corp. v. Department of Industrial Labor and Human Relations*, 88 Wis. 2d 262, 276 N.W.2d 279 (1979), the claimants were determined to be indefinitely laid off due to economic circumstances. Holding that the employees were offered "new work" when they were recalled to replace striking workers, the court distinguished the indefinite layoff at issue from the situation in *Clapp v. Unemployment Compensation Commission*, 325 Mich. 212, 38 N.W.2d 325 (1949), where the layoff was held to be definite in duration because employees were promised recall as soon as necessary materials were available for work to resume. 325 Mich. at 226, 38 N.W.2d at 331. *See also Texas Employment Comm'n v. E–Systems, Inc.*, 540 S.W.2d 761 (Tex. Civ. App. 1976) (employment relationship held severed when automobile workers were laid off indefinitely due to economic circumstances of employer); *Cointreau, Ltd. v. Board of Review*, 171 N.J. Super. 407, 409 A.2d 811 (N.J. 1979) (claimants, seasonal workers in the wine processing business, were held to be indefinitely laid off because of lack of work); and *Bowen v. Review Bd. of Indiana Employment Sec. Div.*, 173 Ind. App. 166, 362 N.E.2d 1178 (1977) (court held claimant was laid off indefinitely where no date set for his return to work).

Dole relies on two cases, *Hemstock Concrete Products, Inc. v. Labor and Industry Review Commission*, 127 Wis. 2d 437, 380 N.W.2d 387 (Wis. App. 1985), and *Barrier v. Employment Division*, 29 Or. App. 387, 563 P.2d 1230 (1977), in support of their position that its employment relationship with Claimants continued after the layoffs and therefore the recalls to fill vacancies left by strikers were not "new work" justifying disqualification from benefits. However, these cases reinforce the principle that an indefinite layoff with no reasonably ascertainable date of recall is a termination of employment whereas "a short term layoff for a definite period" is not a termination. (UIPL No. 984 at 4.) *Hemstock*

*Concrete Products, Inc.* involved employees who were regularly laid off during each winter when their employer, a manufacturer of concrete blocks and prestressed concrete products, would experience declining sales when its principal customers were unable to work due to inclement weather. Since the employees had a definite expectation of being recalled within the foreseeable future, i.e. as soon as the Spring weather permitted, the court held that the employment relationship was never severed and disqualification from benefits was justified. Also, in *Barrier*, claimants, employed by an employer who processed cherries, were laid off due to the seasonal nature of the work and expected to return to work when the fresh cherry season began. The court held that the definiteness of the duration of the layoff was sufficient attachment to maintain an employer–employee relationship so as to disqualify claimants when they rejected recalls during a strike.

Dole contends that the bargaining agreement establishes a definite time period for the layoffs and that the evidence supports a continuing employment relationship. First, Dole argues that Claimants' layoffs were for a definite period relying on section 5.02 of the bargaining agreement which states, in pertinent part, that "[s]eniority shall be considered broken by (a) discharge, (b) resignation, or (c) *twelve (12) consecutive months of lay off*[.]" (Emphasis added.) Dole reasons that the agreement limits the layoffs to a definite period of twelve (12) months which, if exceeded, seniority is broken and the equivalent of discharge or resignation occurs. Dole's position is untenable as it has no bearing on whether there was a reasonably ascertainable date when Claimants would be recalled. The period of twelve (12) months does not refer to a recall time but merely to the maximum time Claimants could retain their seniority rights subsequent to being laid off.

Second, Dole argues that factors indicating an ongoing relationship at the time of layoff include the maintaining of Claimants' names on its records as employees and that while on layoff status

Claimants were required and did call in for work. These practices we determine to be merely incidental to the administration of Claimants' seniority rights.

> The existence of a seniority right to recall does not continue the contract of employment beyond the date of layoff. Such a seniority right is the worker's right; it does not obligate the worker to accept the recall and does not require the employer to recall the worker. It only requires the employer to offer work to the holder of the right, before offering it to individuals with less seniority.

UIPL No. 984 at 4.

In *Texas Employment Commission*, the court in holding that the employment relationship was severed at the time Claimants were laid off stated, "[t]he facts that claimants were members of the union, and that they may have had seniority rights insofar as recall was concerned, are in our opinion too remote to cause us to hold that the jobs offered on recall were 'claimants' jobs.'" 540 S.W.2d at 763. This court in *Agsalud v. Blalack*, 67 Haw. 588, 699 P.2d 17 (1985), also rejected the proposition that seniority recall rights established the continuation of the employment relationship:

> DLIR and United Airlines put great weight on the fact that Blalack had the right to be recalled based on seniority. DLIR and United Airlines argue that the right of recall causes the employment relationship to continue. DLIR and United Airlines' position would lead to the absurd result that Blalack would never receive unemployment compensation no matter how long he was unemployed.

67 Haw. at 591–92, 699 P.2d at 19 (footnote omitted).

Dole further argues that other indicia of an existing employment relationship were Claimants' continued enrollment in the company's pension and medical plan after layoff, Claimants' non–receipt of severance pay and their having participated in the strike. The evidence is undisputed that once Claimants were laid off, Dole

ceased contributions to the pension plan and the fact that during layoff Claimants could maintain their medical coverage by continuing to contribute to Dole's plan is not an obligation of a contractual employment relationship but required by law.[5] Neither does the fact that Claimants not receiving severance pay at layoff establish an employment relationship. Withholding of severance payments potentially for a year, when seniority is broken and the equivalent of discharge or resignation occurs, would serve to benefit only Dole. Moreover, Dole submits that Claimants' participation in the strike is confirmation of an employer–employee relationship. However, upon determining that Claimants' layoffs were for an indefinite period which terminated the employment relationship, the recall offers were for "new work" to fill vacancies due to the strike, and therefore, the Claimants are entitled to unemployment benefits under the strikebreaker statute regardless of their participation in the strike effort. *Campos*, 132 Cal. App. 3d at 975, 183 Cal. Rptr. at 645.

Dole has failed to meet its burden of proving a continuing employment relationship with Claimants at the time of recall, a prerequisite to disqualification under the labor dispute provision, HRS § 383–30(4).

## V.

Review of the entire record convinces us that there is substantial evidence and law to support the Referee's decision. Reversed and remanded to the circuit court for entry of judgment consistent with this opinion.

---

[5] The Prepaid Health Care Act, HRS Chapter 393 (1985), requires employers to provide health insurance coverage to their employees. Under the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1161–63, continued medical coverage must be offered to an individual whose employment is severed.

*James A. King* (King, Nakamura & Chun–Hoon, of counsel) for Appellees–Appellants.

*Barry W. Marr* and *Patrick H. Jones* (Carlsmith, Wichman, Case, Mukai & Ichiki, of counsel) for Appellant–Appellee.

*Wilfredo Tungol*, Deputy Attorney General, for Appellee–Appellee.