ALLEN-BRADLEY COMPANY, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Appellant: SCHMIDT, Defendant.*

*No. 351. Argued February 28, 1973.—Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 129.)

---

* Motion for rehearing denied, without costs, on June 5, 1973.

**4**

For the appellant Department of Industry, Labor & Human Relations there was a brief and oral argument by *Uclair W. Brandt,* chief counsel.

For the respondent there was a brief by *Quarles, Herriott, Clemons, Teschner & Noelke,* attorneys, and *Laurence E. Gooding, Jr.,* and *Stephen Z. Surridge* of counsel, all of Milwaukee, and oral argument by *Mr. Surridge.*

ROBERT W. HANSEN, J.   Was the defendant required to show "good cause" for refusing to work on a different shift in order to continue to receive unemployment compensation benefits? The circuit court held that she was. The department held that she was not required to show "good cause" for turning down a second-shift job offered by the employer for whom she had earlier worked.

Three statutes are involved in answering the question posed.

The first is sec. 108.04 (8) (a), Stats., providing:

"SUITABLE WORK.  (a) If an employe fails either to apply for work when notified by a public employment office or to accept work when offered to him, and such failure was *without good cause* as determined by the department, he shall be ineligible for the week in which such failure occurs and thereafter until he has again been employed within at least 4 weeks and has earned wages equaling at least 4 times his weekly benefit rate." (Emphasis supplied.)

The second statute involved is sec. 108.04 (8) (af), Stats., providing:

"If an employe fails to return to work with a former employer who has duly recalled him, and such failure was *without good cause* as determined by the department, he shall be ineligible for benefits from that employer's account for the week in which such failure occurs and

thereafter until he has again been employed within at least 4 weeks and has earned wages equaling at least 4 times his weekly benefit rate." (Emphasis supplied.)

The third statute involved is sec. 108.04 (9), Stats., providing:

"PROTECTION OF LABOR STANDARDS. Benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept *new work* under any of the following conditions:
"(a) If the position offered is vacant due directly to a strike, lockout, or other labor dispute;
"(b) *If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality;*
"(c) If as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization." (Emphasis supplied.)

Emphasis is placed on the matter of whether the "suitable work" statute (sec. 108.04 (8) (a)) or the "duly recalled" statute (sec. 108.04 (8) (af)) here applies. The circuit court held that it was the "duly recalled" statute that applied. The department contends that it is the "suitable work" statute that is applicable. It is true that the penalties for failure to respond to a recall are different under the two sections. Under the "suitable work" statute, a noncomplying employee loses all benefits. Under the "duly recalled" statute, only benefits from the recalling employer's account are lost.

Both statutory sections require that failure to accept work offered be based upon "good cause as determined by the department." Where the issue is whether the department here was required to determine and the defendant to establish "good cause" for turning down the different shift job in order to keep herself on the unemployment compensation rolls, we do not see the case hinging on which of the two statutes apply. However,

on the facts here, we do not set aside the trial court holding that the "duly recalled" statute (sec. 108.04 (8) (af)) applies to this defendant in this situation and under these facts.

Of course, if the words "new work" in the fair labor standards provisions of sec. 108.04 (9), Stats., were held to describe only one reporting for "suitable work" under sec. 108.04 (8) (a), and not to one "duly recalled" under sec. 108.04 (8) (af), then the question of which statute applies would be far more significant. There is authority for holding that the term "new work" presupposes a job applicant going to a prospective employer for an entirely new job.[1] Countering such authority, the department argues that years might elapse before an indefinitely laid-off employee was recalled to work. Such recall, it is submitted, should be considered "new work," and we agree. But we go farther to assert that, in the light of the purpose, intent and wording of the labor standards provisions of sec. 108.04 (9), Stats., there is no necessity for limiting its applicability to new job applicants, and denying its protections to indefinitely laid-off employees recalled to work. In such situations, the work is new even though the worker is not.

Sec. 108.04 (9), Stats., is entitled "Protection of Labor Standards," and that is the exact legislative intent and

[1] *See:* Commerce Clearing House Unemployment Insurance Reporter 1B, paragraph 1965, *Refusal of Suitable Employment* (1971), at page 4429, stating:

". . . According to this ruling [a 1949 ruling by the Secretary of Labor] the term 'new work' as used in the section must be interpreted to carry out the legislative intent which is 'to prevent States from using their unemployment compensation laws to compel new workers, under the threat of a denial of unemployment compensation benefits, to accept strikebound jobs, or to accept substandard wages, or to join a company union or resign or refrain from joining any bona fide labor organization.' . . . The term 'new work' presupposes an absence of an employment relationship between the applicant for the job and the prospective employer according to the ruling. . . ."

purpose furthered. In dealing with social security legislation, it has been stated that " 'the primary consideration in the determination of the applicability of the statutory definition is whether the effectuation of the declared policy and purposes of the Act comprehend securing to the individual the rights guaranteed and protection afforded by the Act.' " [2] Giving weight to legislative intent and liberal interpretation to a worker protection enactment, we hold the labor standards provisions of sec. 108.04 (9) to apply to indefinitely laid-off employees recalled to work under sec. 108.04 (8) (af) as well as to those offered suitable work under sec. 108.04 (8) (a).

Holding both the "duly recalled" and "fair labor standards" statutes to be here applicable, leaves remaining the question of whether the defendant here was required to show "good cause" for refusing the different shift job offered to her by the employer. The department contends that the second-shift job violated the requirement that "wages, hours, or other conditions of the work offered" are not to be "substantially less favorable to the individual than those prevailing for similar work in the locality." It would follow, if this is so, that the department was not required to hear or determine the question of "good cause," and it has not done so.

Read in their entirety, the labor standards provisions clearly relate to substandard offers of new work, specifically mentioning positions vacant by reason of labor disputes, or requiring joining a company union, or requiring resignation or not joining a bona fide labor organization, or where *wages, hours or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.*" The italicized words direct attention where? To the amount of wages to be paid for the particular job

[2] *United States v. Silk* (1947), 331 U. S. 704, 713, 67 Sup. Ct. 1463, 91 L. Ed. 757, quoting *Labor Board v. Hearst Publications* (1944), 322 U. S. 111, 131, 64 Sup. Ct. 851, 88 L. Ed. 1170.

as compared to the wages paid for similar work in the locality—to the number of hours required to be worked on the particular job as compared to the number of hours required for similar work in the locality—not to the particular shift on which the comparable number of hours are worked or for which the comparable wages are paid.

Since the labor standards provisions are required by Act of Congress as a condition for approval under sec. 3304 (a) (5) of the Federal Unemployment Tax Act, the provisions found in sec. 108.04 (9) (b), Stats., are not unique to this state. Nor is there any dearth of cases dealing with unemployment compensation claimants refusing to accept new work on a particular shift. They are collected in Annot. (1971), *Unemployment Compensation: Eligibility as Affected by Claimant's Refusal to Work at Particular Times or on Particular Shifts*, 35 A. L. R. 3d 1129. For our purpose, here it is enough to note that the cases cited dealing with new work do not treat refusal to accept a new job on a particular shift as a protected labor standard, but rather as raising the issue of "good cause" or "availability for work."

The trial court here did not hold that the defendant was not entitled to unemployment compensation benefits. It did hold that the department was required to determine whether the defendant had "good cause" for refusing to accept a second-shift job with a higher pay scale. It reversed the commission's decision and remanded the case for further proceedings with instructions to the department to make a determination as to the defendant's eligibility for benefits under sec. 108.04 (8) (af), Stats. That was exactly what should and had to be done.

*By the Court.*—Judgment affirmed.