171 N.J. Super. 407 (1979)
409 A.2d 811
COINTREAU, LTD., PLAINTIFF-APPELLANT,
v.
BOARD OF REVIEW, DEPARTMENT OF LABOR AND INDUSTRY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1979.
Decided December 12, 1979.
*408 Before Judges CRANE, MILMED and KING.
Frank X. McDermott argued the cause for appellant (Apruzzese and McDermott, attorneys, and Richard C. Mariani on the brief).
Michael R. Clancy, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney, and Michael S. Bokar, Deputy Attorney General, of counsel).
Carpenter, Bennett & Morrissey, attorneys for New Jersey Business and Industry Association, filed a brief amicus curiae (Laurence Reich, of counsel and on the brief).
*409 The opinion of the court was delivered by KING, J.A.D.
This is an appeal by Cointreau, Ltd. from a decision of the Board of Review, Department of Labor and Industry, affirming a decision of the Appeals Tribunal, Division of Unemployment and Disability Insurance, granting unemployment compensation to three of its employees (claimants). The claimants were members of Local 19 of the Distillery, Rectifying and Wineworkers' International which represented Cointreau's hourly workers at its Lawrenceville plant.
On March 30, 1977 the claimants, all part-time assembly line workers, were laid off indefinitely due to a lack of work. These employees, though part-time, worked full shifts when employed in this seasonally sensitive work. They were told by their supervisors that they would be recalled when work became available.
At an April 2 meeting the membership of Local 19 voted to strike the plant starting April 4. On that morning a picket line was formed. On April 4 at about 11 a.m. the laid-off claimants were called by Cointreau's management and told that work was available to them at the struck plant. Cointreau agreed at the administrative proceeding that these laid-off employees were recalled to replace the full-time employees who were on strike. The laid-off employees refused to cross the picket line and report for work on April 4. The strike continued through June 2, although the company continued limited production with management personnel throughout.
The claimants, who successfully sought unemployment benefits in the Division, participated minimally in the picket line for a few hours a week. However, the Appeals Tribunal found as a fact that these claimants were available for suitable work and were not thereby disqualified for benefits. See N.J.S.A. 43:21-5(c). The factual finding is not challenged on this appeal.
Cointreau contends that the three laid-off employees should not have received benefits because their unemployment after April 4 was the result of a labor dispute and not a lay-off and *410 because they rejected an offer of "suitable work" within the meaning of N.J.S.A. 43:21-5(c). Our Unemployment Compensation Act provides that an individual shall be disqualified for benefits:
For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed; provided, that this subsection shall not apply if it is shown that:
(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and
(2) He does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; .. . [N.J.S.A. 43:21-5(d)].
The purpose of this provision is to "place the State in a completely neutral position" with respect to labor disputes which result in temporary unemployment. Sweeney v. Board of Review, 43 N.J. 535, 539 (1965); Febbi v. Employment Security Div., 35 N.J. 601, 606 (1961).
More precisely pertinent to the dispute before us, however, is N.J.S.A. 43:21-5(c)(2) which qualifies a laid-off employee's duty to accept "suitable" work or be disqualified for benefits:

Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise qualified individual for refusing to accept new work under any of the following conditions:
(a) If the position offered is vacant due directly to a strike, lockout, or other labor dispute[s]; . .. [Ibid; emphasis added].
This provision must be included in all federally-qualified state unemployment compensation plans. See 26 U.S.C.A. § 3304(a)(5)(A).
Our courts have followed the general rule that the existence of a labor dispute does not automatically cause disqualification. "The labor dispute must be the cause of the unemployment." Sweeney v. Board of Review, above, 43 N.J. at *411 540. If the unemployment is originally caused by lack of work and a labor dispute develops thereafter, the laid-off worker is generally not disqualified until work again becomes available and he refuses the work because of the labor dispute. Ibid. There is no doubt from the record before us that the claimants were laid off indefinitely because of lack of work prior to the start of the strike. The critical question, therefore, is whether their refusal to cross the picket line and assume the jobs of their striking colleagues was an improper refusal of suitable "new work" within the meaning of N.J.S.A. 43:21-5(c)(2)(a). We agree with claimants that the jobs offered to them on April 4 were "vacant due directly to a strike" within the meaning of subsection (c)(2)(a) and that their refusal to enter the struck plant was a justified refusal of "new work" under the statute.
The statute manifests a clear legislative intent that the State remain completely neutral during a labor dispute. But the statute just as clearly manifests an intent that unemployed workers need not be turned into strike breakers, or suffer a denial of benefits. The claimants had been laid off indefinitely on March 30. Their recall to fill the struck jobs on April 4 was "new work" within the meaning of N.J.S.A. 43:21-5(c)(2) because, but for the strike, these jobs would not have been available to the claimants.
The claimants rely on several cases from other jurisdictions in support of their contention that the company's offer of the struck jobs was "new work" as to them under N.J.S.A. 43:21-5(c)(2). In Texas Employment Comm'n v. E-Systems, Inc., 540 S.W.2d 761 (Tex.Civ.App. 1976), claimants were laid off for economic reasons prior to the beginning of a strike. They were recalled for work during the strike and refused to cross the picket line. In interpreting a statute identical to New Jersey's the Texas court held that the claimants were not disqualified from receiving benefits because it was undisputed that the jobs *412 offered were due directly to the strike. The court found that claimants had been laid off indefinitely with no specific arrangements for rehiring and it construed the offer of the struck jobs as "new work." The Texas court stated:
We agree with Appellant that the jobs offered constituted "new work," and so hold for the reasons hereinabove stated. The employer-employee relationship was severed at the time each claimant was laid off, and this was the situation at the time the jobs were offered. The facts that claimants were members of the union, and that they may have had seniority rights insofar as recall was concerned, are in our opinion too remote to cause us to hold that the jobs offered on recall were "claimants' jobs." This being so, we hold that claimants are not disqualified from receiving unemployment compensation because of their refusal to accept the jobs offered. [540 S.W.2d at 763]
In Davis v. Hix, 140 W. Va. 398, 84 S.E.2d 404 (Sup.Ct. 1954), coal miners and members of the United Mineworkers of America, who were unemployed at the time of a work stoppage in the mines due to a labor dispute, were held not disqualified from unemployment benefits even though they refused work in the mines tendered during the strike. The West Virginia court found that the claimants' anticipation of benefits as a result of the strike upon their reemployment on cessation of the dispute was too remote an interest to disqualify them. 84 S.E.2d at 414. Again, the struck jobs were held to be "new work" and not "suitable work." 84 S.E.2d at 417-418. See, also, Bowen v. Indiana Review Bd., Emp. Sec. Div., Ind. App., 362 N.E.2d 1178 (Ind. App. 1977); Annotation, "Unemployment Benefits  Labor Disputes," 63 A.L.R.3d 88, 165-168 (1975).
An older New Jersey decision by our then highest court also appears to support claimants' position that N.J.S.A. 43:21-5(c)(2) permits a worker to refuse available work because of a strike at his former employer's plant and retain eligibility for benefits. In Bergen Point Iron Works v. Board of Review, 137 N.J.L. 685 *413 (E. & A. 1948), claimant was laid off from his job as a watchman at an iron works due to a work stoppage and was therefore ineligible for benefits. Thereafter, he secured a new job at a shipyard which he intended to be permanent but was subsequently laid off and applied for benefits. The Court of Errors and Appeals reversed a lower court decision which had held that claimant was disqualified because of the continued work stoppage at his prior employer's plant. The court also rejected an argument that benefits should not be allowed because work was then available to claimant at his prior employer's plant, even though the strike was still in progress, stating:
... Furthermore, we do not consider it pertinent that work may have been available to him after July 1[st] at the Bergen Point Iron Works in view of the fact that the strike was then still in progress. Under the terms of R.S. 43:21-5(c)(2), N.J.S.A., such work at a struck plant is not deemed suitable and benefits may not be denied on account thereof to a claimant who is otherwise eligible. [at 687]
Concededly, there is authority contrary to the conclusion we reach here. See Barrier v. Employment Division, 29 Or. App. 387, 563 P.2d 1230 (Ct.App. 1977); Fort Smith Chair Co. v. Laney, 238 Ark. 636, 383 S.W.2d 666 (Sup.Ct. 1964); Merryman v. Administrator, Unemployment Comp. Act, 23 Conn.Super. 233, 181 A.2d 260 (Super.Ct. 1962); see, also, Galvin v. Iowa Beef Processors, Inc., Iowa, 261 N.W.2d 701 (Sup.Ct. 1978). Additionally, we note that Ablondi v. Board of Review, 8 N.J. Super. 71 (App.Div. 1950) is inapplicable to the case before us. In Ablondi this court affirmed a factual finding by the Division that the claimants were rendered unemployed because of a labor dispute. The facts here undisputedly ascribe the March 30 layoff for an indefinite period to lack of work, not to a labor dispute.
The jobs to which claimants were recalled on April 4 were not "their work" but were "new work" created by the strike. Under *414 N.J.S.A. 43:21-5(c)(2) they were not required to become strikebreakers or forfeit their unemployment benefits.
Affirmed.