[Civ. No. 53077. First Dist., Div. Four. June 21, 1982.]

ENGRACIA CAMPOS et al., Plaintiffs and Appellants, v.
EMPLOYMENT DEVELOPMENT DEPARTMENT et al.,
Defendants and Respondents;
BRENDLIN-RICE COMPANY et al., Real Parties in Interest and
Respondents.

COUNSEL

Richard M. Pearl, Nancy Sams, Mary K. Gillespie, Timothy H. McCarthy, Teresa Saucedo, W. Kenneth Rice and Vibiana Andrade for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Thomas E. Warringer, Assistant Attorney General, and Charlton G. Holland, Deputy Attorney General, for Defendants and Respondents.

Littler, Mendelson, Fastiff & Tichy, George J. Tichy II, John M. Skonberg and Richard N. Hill for Real Parties in Interest and Respondents.

OPINION

**CHRISTIAN, J.**—Engracia Campos and others appeal from a judgment denying administrative mandamus and other relief connected with claims by appellants for unemployment benefits. Benefits were terminated by the Employment Development Department on the ground that appellants, former employees of real parties Brendlin-Rice Company and others, had left their work because of a trade dispute. More than 100 claimants, including each of the present appellants, took an administrative appeal from this determination. An administrative law judge upheld the termination of benefits; that decision was adopted by the Unemployment Insurance Appeals Board.

Appellants sought a writ of administrative mandamus (Code Civ. Proc., § 1094.5) on their own behalf and injunctive relief, declaratory

relief, traditional mandamus (Code Civ. Proc., § 1085), and relief from deprivation of civil rights (42 U.S.C. § 1983) on behalf of themselves and all others similarly situated. All parties made motions for summary judgment; the parties stipulated that the issues of defendants' liability on the merits was to be resolved on summary judgment whereas the remaining issues were bifurcated from the merits. The court granted summary judgment adverse to the claimants and the present appeal followed.

Appellants were employed on a seasonal basis by real parties in interest John Inglis Frozen Food Company and Spiegl Foods, Inc., who were frozen food processors. Brendlin-Rice Company and Knudsen Frozen Foods, two of the real parties in interest, were purchased by Spiegl in 1975. The industry is seasonal: the number of workers needed fluctuates throughout the year on the basis of crop availability. By late August 1976, each of the appellants had been indefinitely laid off for varying periods of time. As unemployed workers they were receiving unemployment insurance benefits.

The workers in the employers' plants, including appellants, were members of Teamsters union locals and were covered by collective bargaining agreements. The agreements provided for a system of recalling laid-off workers according to seniority, i.e., the first employees hired would be the last laid off and the first to be recalled. These agreements were still in effect on August 26, 1976, when a strike was called by several local unions in a trade dispute connected with contract negotiations. The employees who were working at the plants at the time walked out and picket lines were established.

Shortly after the strike commenced, the employers telephoned every worker on the seniority lists and offered them work. The Brendlin-Rice Company and Knudsen seniority lists were merged into the Spiegl list in June 1976. The Spiegl list consisted of 610 potential employees and the Inglis list of 450 names. The telephone recall offers were followed by written confirmation which indicated that work was available "every day until further notice." These confirmations were sent on September 3, 1976, to all of the people on the employers' seniority lists. Almost all the employees rejected the recall offers. Some of the appellants testified that they refused to return to work because they were afraid, or merely did not want, to cross picket lines. Many of the laid-off workers were not involved in picketing but others participated in the picket lines and received strike benefits in return for their participation. The strike was settled on October 2, 1976.

■ The question presented by this appeal is whether workers on indefinite layoff are disqualified from receiving unemployment benefits when they refuse to accept recall offers in the course of a trade dispute. Two statutes bear on this question: One provides that "[a]n individual is not eligible for unemployment compensation benefits, and no such benefits shall be payable to him, *if he left his work* because of a trade dispute. Such individual shall remain ineligible for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed." (Unemp. Ins. Code, § 1262 [sometimes referred to as "the striker provision"]. Italics added.) ■ The courts have recognized a two-part test of ineligibility under this section: (1) the worker must voluntarily leave or remain away from his employment (a volitional test) and (2) the worker must leave or remain away from his employment because of a trade dispute (a causational test). (*Ruberoid Co.* v. *California Unemployment Ins. Appeals Board* (1963) 59 Cal.2d 73, 77 [27 Cal.Rptr. 878, 378 P.2d 102].) The striker disqualification is applied only where the employee is "personally responsible" for his absence from work. In making this determination, courts have relied on such factors as union membership, identity of interest in the dispute, whether work was actually available during the strike, picketing activities and receipt of strike benefits. (See *Chrysler Corp.* v. *California Unemp. Ins. Appeals Board* (1962) 199 Cal.App.2d 683, 688 [18 Cal.Rptr. 843]; *Chrysler Corp.* v. *Calif. Emp. etc. Com.* (1953) 116 Cal.App.2d 8, 16 [253 P.2d 68]; *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 328 [109 P.2d 935].)

Respondents contend that section 1262 is dispositive of the issue of disqualification. This view, however, ignores another enactment which provides, in pertinent part, that: "Notwithstanding any other provisions of this division ... benefits shall not be denied to any otherwise eligible and qualified individual for refusing new work .... (a) If the position offered is vacant due directly to a strike, lockout, or other labor dispute." (Unemp. Ins. Code, § 1259 [sometimes referred to as "the strikebreaker provision"].) Appellants contend that where workers are recalled from indefinite layoff, the work they are offered is "new work." On that basis they claim coverage under section 1259 and exemption from the ineligibility created by section 1262.

A brief review of the federal-state structure of unemployment insurance will form a useful context for discussion of the issue. The unemployment insurance program was initiated in 1935 by the Social

Security Act. (26 U.S.C. § 3301; 42 U.S.C. § 501 et seq., § 1101 et seq.) That act imposed a tax on employers that each state could mitigate by establishing its own unemployment insurance program meeting federal guidelines. (26 U.S.C. § 3301 et seq.) Although "Congress intended the several States to have broad freedom in setting up the types of unemployment compensation they wish[ed,]" it also directed each state to meet certain fundamental requirements for approval of the state plans. (*New York Tel. Co. v. New York Labor Dept.* (1979) 440 U.S. 519, 537-538, 543 fn. 42 [59 L.Ed.2d 553, 567, 571, 99 S.Ct. 1328]; *Ohio Bureau of Employment Services v. Hodory* (1977) 431 U.S. 471, 488 [52 L.Ed.2d 513, 526-527, 97 S.Ct. 1898].)

Among the provisions to which a state unemployment statute must conform in order to qualify for federal approval is the following which is closely followed by California Unemployment Insurance Code section 1259, the statute at issue here: "[C]ompensation shall not be denied in such State to any otherwise eligible individual for refusing to accept new work ...: (A) if the position offered is vacant due directly to a strike, lockout, or other labor dispute...." (26 U.S.C. § 3304(a)(5)(A).)

The United States Department of Labor is the federal agency responsible for ensuring that state unemployment laws comply with the mandatory federal criteria set out by Congress. (26 U.S.C. § 3304; 42 U.S.C. § 503.) ■ Since section 1259 of the California Unemployment Insurance Code is mandated by the federal statute, interpretations of the federal statute by federal agencies such as the Department of Labor, although not binding on the courts, are entitled to great weight. (*Brennan v. Owensboro-Daviess Cty. Hosp., etc.* (6th Cir. 1975) 523 F.2d 1013, 1028, cert. den. 425 U.S. 973 [48 L.Ed.2d 796, 96 S.Ct. 2170].)

In its Unemployment Insurance Program Letter No. 984 (1968), the Department of Labor considered the application of the term "new work" to the situation of workers whose current employers offer new positions under less favorable working conditions.[1] The Program Letter

---

[1]The letter focused on section 3304(a)(5)(B); in context, that section provides: "(5) compensation shall not be denied in such State to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (A) if the position offered is vacant due directly to a strike, lockout, or other labor dispute; (B) if the wages, hours, or other conditions of work offered are substantially less favorable to the individual than those prevailing for similar work in the locality...." (26 U.S.C. § 3304(a)(5).)

stated: "[A]n offer of new work includes ... an offer of re-employment to an unemployed individual by his last (or any other) employer with whom he does not have a contract of employment at the time the offer is made.... The question is whether the offer of re-employment is an offer of a new contract of employment. If the worker ... was discharged or laid off indefinitely, the existing contract of employment was thereby terminated. An indefinite layoff, that is a layoff for an indefinite period with no fixed or determined date of recall, is the equivalent of a discharge."

Respondents argue that work offered by a claimant's last employer is not new work; in rejecting this interpretation, the letter continued: "[I]f the phrase 'new work' were limited to work with an employer for whom the individual has never worked, it is plain that the purpose of section 3304(a)(5) would be largely nullified. It can make no difference, insofar as that purpose is concerned, that the unemployed worker is offered re-employment by his former employer rather than re-employment by one in whose employ he has never been.... The question is whether the offer of re-employment is an offer of a new contract of employment." (*Id.*)

It is undisputed here that appellants had been indefinitely laid off in that there was no definite date of recall; if the approach suggested by the Department of Labor is followed, therefore, there was no contract of employment at the time of the recall and that recall was thus an offer of "new work."

Respondent contends that Program Letter 984 is "inapplicable to the present case ... because it applies to a different statute." This argument is without merit. Although the Program Letter focused on the interpretation of "new work" in the situation where the offered work is under less favorable working conditions (26 U.S.C. § 3304(a)(5)(B)) rather than "new work" in the strikebreaker context (26 U.S.C. § 3304(a)(5)(A)), the reasoning is equally applicable to both sections.

■ Words used in a single statute must be construed consistently within that statute unless there are clear indications that the Legislature intended otherwise. (*Stillwell* v. *State Bar* (1946) 29 Cal.2d 119, 123 [173 P.2d 313].) As there is no indication here that Congress intended the term "new work" to have a different meaning as applied to sections (A) and (B) of section 3304(a)(5), the term must be construed to have a consistent meaning. The Department of Labor's interpretation

of "new work" as to section 3304(a)(5)(B) is therefore also applicable to section 3304(a)(5)(A).

Respondents argue that *Matson Terminals, Inc. v. Cal. Emp. Com.* (1944) 24 Cal.2d 695 [151 P.2d 202], and *Barber v. California Emp. Stab. Com.* (1954) 130 Cal.App.2d 7 [278 P.2d 762], as well as prior determinations by the Unemployment Insurance Appeals Board, control and that, under these decisions, the recall offers here are not "new work" as to appellants.

The claimants in *Matson* were longshoremen whose collective bargaining agreement provided for their dispatch from a hiring hall in rotation; the longshoremen reported to a hiring hall and were dispatched according to who had waited the longest since last being employed. Dispatch to an employer was not dependent on seniority but instead on the employee's rotational status. A strike was called by the Ship Clerks Union and the longshoremen refused to cross that union's picket lines to perform their usual work. The *Matson* court denied unemployment benefits to the longshoremen on the rationale that the longshoremen had left work because of a trade dispute within the meaning of California Unemployment Insurance Code section 1262. The court found that there was a sufficient employment relationship to apply the striker disqualification where the employee "has a legally enforceable right whereby the group is entitled to first call on the work and each longshoreman is entitled to his share.... The longshore work that each claimant regularly performed for the various members of the employers' association, and to which he had an exclusive right[,] was 'his work' within the meaning of [former section 56, subdivision (a); currently § 1262]." (*Matson Terminals, Inc. v. Cal. Emp. Com., supra,* 24 Cal.2d 695, 706.) Thus, reasoned the court, the longshoremen had, in effect, left their work and were thereby disqualified from receiving unemployment benefits.

The *Matson* court based its decision on the group work-sharing arrangement utilized by the longshoremen and their employers; there is no such arrangement here. Instead, where workers here are laid off, their only right is to be recalled on a seniority basis. Thus, unlike *Matson*, there is no continuing employment relationship in the present case.

Furthermore, *Matson* dealt only with section 1262; here section 1259 must also be considered. Even if claimants here were found to have "left their work because of a trade dispute" within the meaning of section

1262, their disqualification from unemployment is nevertheless subject to the exception of section 1259. More specifically, section 1259 is prefaced by the language: "[n]otwithstanding any other provisions of this division"; thus, where the strikebreaker exception of section 1259 applies, the "striker" disqualification of section 1262 is not dispositive. The *Matson* court was not faced with a situation where the claimants were being recalled to jobs which were vacant due directly to a strike as in the instant situation; that court was never required to reach the issues involved in an interpretation of the term "new work" as used in section 1259. For these reasons, *Matson* is not controlling here.

Respondents also cite *Barber, supra*, 130 Cal.App.2d 7, in which the factual situation and legal issues presented more closely parallel those of the case at bar. *Barber*, like *Matson*, involved longshoremen whose employment was governed by a rotational hiring hall system. All of the claimants were unemployed when the dispute began in the sense that they had completed prior assignments and were registered for employment at their respective hiring halls. The court in *Barber* found that the longshoremen had "such a group attachment to all available work that when a strike is called, and a work stoppage results, it must be held that each such registered member 'left his work' because of the trade dispute, and is therefore disqualified from receiving benefits under [former section 56, subdivision (a); currently § 1262]." (*Barber v. California Emp. Stab. Com., supra*, 130 Cal.App.2d at p. 16.)

The *Barber* court then proceeded to reject arguments based on the "new work" provisions of the strikebreaker exception: "If the men left their work because of a trade dispute within the meaning of section 56(a) [§ 1262], they are ineligible for benefits during the period of the strike, because the jobs thus made vacant are their jobs and not as to them 'new work.' . . . In such a case the offered work is the regular work each registered member already claims, although its assignment rotates through the registered group who are awaiting vacancies and assignment. . . . The work made vacant by a strike is 'new work' only to strangers to the strike. It is not 'new work' to the strikers themselves when they fall within the classification made by section 56(a)." (*Barber v. California Emp. Stab. Com., supra*, 130 Cal.App.2d at p. 22.) The court closely scrutinized the group attachment which existed under the longshoremen's rotational hiring system and concluded on that basis that they were ineligible for unemployment benefits.

Respondents attempt to apply the "group attachment" concept utilized in *Barber* to the situation of laid-off seasonal workers who refuse to accept recall offers to struck work. The holdings of *Matson* and *Barber*, however, are limited to their unique factual backgrounds. In the maritime industry, contractual work-sharing rotational hiring procedures are utilized instead of seniority systems. The effect of the rotational system is to insure that each member of a defined group obtains an equal number of assignments. By contrast, a seniority system protects those workers with the greatest seniority, insuring that they will always be employed ahead of lower seniority workers. Thus, under a seniority system, unlike the rotational procedure, the employees have no contractual right to share available work; instead the laid-off workers here have only a right to preferential rehire on the basis of seniority should jobs become available. Under the seniority system, the workers have a mere expectation of future employment which may never be realized due to the number of individuals with greater seniority; thus workers at the low end of the seniority list are likely to be hired only infrequently and for short periods of time. We conclude that since the distinct factual situations present in *Matson* and *Barber* do not exist in this case, their rationale is inapplicable here and does not control the interpretation of the term "new work."

Since there is no California case law directly on point, it is useful to consider out-of-state authorities which have examined this issue; unfortunately, these authorities are in conflict. Appellants point to several decisions from other jurisdictions supporting their contention that the employers' recall offers were "new work" as to them under section 1259. In *Texas Employment Commission v. E-Systems, Inc.* (Tex.Civ. App. 1976) 540 S.W.2d 761, claimants were laid off for economic reasons prior to the beginning of a strike. They were recalled for work during the strike and refused to cross the picket line. The Texas court was required to interpret a statute almost identical to that at issue here. In construing that statute, the court found that the claimants had been laid off indefinitely with no specific commitment for rehiring and that under these circumstances, the recall offer constituted "new work." The court stated: "[T]he jobs offered constituted 'new work,' ... The employer-employee relationship was severed at the time each claimant was laid off, and this was the situation at the time the jobs were offered. The facts that claimants were members of the union, and that they may have had seniority rights insofar as recall was concerned, are in our opinion too remote to cause us to hold that the jobs offered on recall were 'claimants' jobs.' This being so, we hold that claimants are not dis-

qualified from receiving unemployment compensation because of their refusal to accept the jobs offered." (*Texas Employment Commission* v. *E-Systems, Inc., supra*, 540 S.W.2d 761, 763.) The rationale of the Texas court is fully applicable to the instant case; it supports a determination that benefits should be awarded here.

A New Jersey appellate court has also construed "new work" to apply to recall offers made to laid-off employees in a factual situation which closely parallels that of the instant case. (*Cointreau Ltd.* v. *Bd. of Review, etc.* (1979) 171 N.J.Super. 407 [409 A.2d 811].) In *Cointreau*, the claimants were seasonal assembly line workers who had been laid off indefinitely due to a lack of work. When the nonseasonal workers went on strike, the employer attempted to recall the claimants to replace the striking workers; the claimants refused to accept this work. The appellate court held that the recall offers were "new work" as to the laid-off workers and granted benefits on that basis. Although "[t]he statute manifests a clear legislative intent that the State remain completely neutral during a labor dispute[,] the statute just as clearly manifests an intent that unemployed workers need not be turned into strike breakers, or suffer a denial of benefits." (*Cointreau Ltd.* v. *Bd. of Review, etc., supra*, 409 A.2d 811, 813.) Again, this rationale argues persuasively for the position of appellants.

The Supreme Court of Wisconsin has adopted a parallel approach in its interpretation of the term "new work." (*A. O. Smith Corp.* v. *Dept. of I. L. H. R.* (1979) 88 Wis.2d 262 [276 N.W.2d 279]; *Allen-Bradley Co.* v. *Department of Indus. L. & H. R.* (1973) 58 Wis.2d 1 [205 N.W.2d 129].) In both Wisconsin cases the court reasoned that "indefinitely laid-off workers are to be considered as having no employer-employee relationship with the recalling company even though they had, prior to the indefinite layoff, been parties to such relationship." (*A. O. Smith Corp.* v. *Dept. of I. L. H. R., supra*, 88 Wis.2d 262, 266 [276 N.W.2d 279, 282].) Under such circumstances, recall offers to the laid-off employees constitute "new work" as to those workers. (*A. O. Smith Corp.* v. *Dept. of I. L. H. R., supra*, 88 Wis.2d 262, 266-267 [276 N.W.2d 279, 282-283]; *Allen-Bradley* v. *Department of Indus. L. & H. R., supra*, 58 Wis.2d 1, 6 [205 N.W.2d 129, 131].) It follows, therefore, that the refusal of the employee to accept such "new work" in a strikebreaker situation does not operate to disqualify that worker from unemployment compensation benefits. (*A. O. Smith Corp.* v. *Dept. of I. L. H. R., supra*, 88 Wis.2d at p. 266 [276 N.W.2d at p. 283]. Accord, *Hunger* v. *Buffalo Slag Co., Inc.* (1972) 40 App.Div.2d 728 [336

N.Y.S.2d 525] [indefinite layoff of seasonal workers severs employment relationship even if workers retain seniority rights].)

The authorities discussed above utilize similar analytic approaches to reach the result argued for by appellants. Under circumstances where workers are laid off without a definite recall date, a layoff terminates the employment relationship. Any recall offer to a laid-off employee in this situation constitutes an offer to enter into a new contract of employment. Thus, the recall offers here constituted offers of "new work" within the meaning of the unemployment statutes. If the offered position is vacant due to a trade dispute, the strikebreaker provision enables laid-off employees to refuse such employment without suffering a loss of unemployment insurance benefits. This result is consistent with the policy of neutrality in trade disputes established by the unemployment insurance act: "the payment or withholding of benefits should not be used to aid either party to a trade dispute." (*Matson Terminals, Inc. v. Cal. Emp. Com., supra*, 24 Cal.2d 695, 707.)

Respondents point to several decisions which have reached a contrary conclusion.[2] These cases distinguish between temporary as opposed to indefinite layoff. Illustrative of this approach is the decision of an Oregon appellate court in *Barrier v. Employment Division, supra*, 29 Ore.App. 387 [563 P.2d 1230]. In *Barrier*, the claimants were seasonal workers at a cherry processing plant. These workers were laid off and expected to be recalled in order of seniority the next season. When a strike was called, the employer recalled the laid-off workers; these recall offers were refused.

The court determined that the claimants "had not been terminated or placed on indefinite layoff, but were off temporarily with the expectation they would be recalled when the fresh cherry season began." (*Barrier v. Employment Division, supra*, 563 P.2d 1230, 1232.) This

---

[2]The authorities relied on by respondents include *Merryman v. Administrator, Unemployment Comp. Act* (1962) 23 Conn.Supp. 233 [181 A.2d 260]; *Barrier v. Employment Division* (1977) 29 Ore.App. 387 [563 P.2d 1230]; *Fort Smith Chair Company v. Laney* (1964) 238 Ark. 636 [383 S.W.2d 666]; *Harding Glass Company v. Crutcher* (1968) 244 Ark. 618 [426 S.W.2d 403]; *Abbott v. Appeal Board of Michigan Unemployment Comp. Comm.* (1948) 232 Mich. 32 [34 N.W.2d 542]; *Clapp v. Appeal Board of the Michigan Unemp. C. Com'n.* (1949) 325 Mich. 212 [38 N.W.2d 325]; *Employees of Lion Coal Corp. v. Industrial Commission* (1941) 100 Utah 207 [111 P.2d 797]; *Tripp v. Alley Construction Co., Inc.* (1973) 297 Minn. 232 [210 N.W.2d 668]; *Galvin v. Iowa Beef Processors, Inc.* (Iowa 1978) 261 N.W.2d 701; *Bilodeau v. Maine Employment Security Comm.* (1957) 153 Me. 254 [136 A.2d 522].

expectation was held to be a sufficient attachment to the employer to maintain an employer-employee relationship; the existence of this relationship disqualified claimants from receiving benefits if their lack of work was due to a labor dispute. (*Id.*)

Claimants next argued that the jobs made available by the strike were "new work" as to them and, under the strikebreaker provisions, refusal to accept such positions did not disqualify them. The court rejected this argument on the basis that the claimants were not "strangers" to the labor dispute in that they were union members, participated in picketing, collected strike benefits and would benefit from any settlement reached. (*Id.*, at p. 1234.)

Similarly, in *Merryman v. Administrator, Unemployment Comp. Act, supra*, 181 A.2d 260, a Connecticut superior court held that recall offers to employees on layoff were not "new work" as to such employees. The court cited a 1949 ruling by the Secretary of Labor which stated that "'where an individual has no employment relation with any employer and no attachment to any employer or to a job with any employer, all work that may be offered him is "new work"....'" (*Merryman v. Administrator, Unemployment Comp. Act, supra*, 181 A.2d 260, 263; see also 1B Unempl. Ins. Rep. (CCH) § 1965, p. 4429.) The court reasoned that where the laid-off employees were to be recalled on the basis of seniority, "claimants at the time of recall had an 'attachment' to, if not an actual employment relationship with, the company .... [¶] On the basis of this attachment, even if claimants had only a reasonable expectancy, based on past employment practices, of being recalled, rather than a contractual or legally enforceable right thereto, they certainly are not strangers to the proffered jobs, and such jobs are 'their work' rather than 'new work.'" (*Id.*, 181 A.2d at pp. 264-265.) Finally, the court noted that claimants had actively participated in the strike and therefore could not be considered as "innocent victims of a situation wholly beyond their control"; thus, reasoned the court, the claimants were not among the persons intended to be protected by the strikebreaker provisions, i.e., "strangers" to the strike, and could therefore be disqualified from receiving benefits for their refusal to accept the struck work.

These cases characterize seasonal layoffs as temporary rather than indefinite. We consider that, where the employees have no contractual right to recall within any specified time period, the better approach is to treat such layoffs as indefinite, thereby terminating any employment re-

lationship consistent with Department of Labor Program Letter 984. ■ Second, these cases treat the extent of participation of the claimants in the strike as affecting their eligibility for benefits. That consideration is not pertinent; the statute provides that "new work" vacant due to a trade dispute may be refused without resulting in disqualification from benefits. Once it is determined that the recall offers are such "new work" in that the previous employment relationship was terminated prior to recall, the claimants are entitled to benefits under the strikebreaker statute regardless of the extent of their involvement or support of the strike.

Respondents also contend that the decision of the United States Supreme Court in *Unemployment Comm'n v. Aragon* (1946) 329 U.S. 143 [91 L.Ed. 136, 67 S.Ct. 245], supports their position. The claimants in *Aragon* were seasonal cannery workers who were hired in California at the beginning of the season, transported to Alaska for several months and returned to California at the end of the season. The union and employers failed to reach agreement on the terms of a new collective bargaining agreement prior to the start of the season; as a result, no employees were hired for that season. The denial of unemployment benefits to the claimants was upheld on the ground that they were unemployed due to a labor dispute which continued in "active progress" throughout the season.

Respondents argue that *Aragon* is applicable to the case at bar since the claimants in both situations were on seasonal layoff at the commencement of the labor dispute and had "every reasonable expectation of resuming the employment relationship had a strike not occurred." The reasoning of *Aragon* is, however, totally inapplicable to the issues in the present case: here, the court must consider not only a statute which disqualifies strikers from receiving benefits as in *Aragon* (Unemp. Ins. Code, § 1262), but also a companion statute which provides that workers need not accept work as strikebreakers to qualify for benefits (Unemp. Ins. Code, § 1259). The latter statute did not come into play in *Aragon* since there were no recall offers to be accepted or refused by the laid-off workers, i.e., those workers were never asked to replace striking workers. Thus, the strikebreaker statute had no relevance to *Aragon*; in fact, the "new work" statute is never mentioned in that decision. In contrast, here the focal issue is the strikebreaker statute since the laid-off workers in this case were asked to replace regular employees who were on strike.

The judgment is reversed with directions to render judgment for issuance of a writ annulling the determination of the Unemployment Insurance Appeals Board. Appellants' remaining claims were reserved until there was a determination on the merits; these issues may now be adjudicated in further proceedings in the superior court.

Rattigan, Acting P. J., and Poché, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied September 22, 1982. Richardson, J., was of the opinion that the petitions of John Inglis Frozen Food Company and Spiegl Foods, Inc. should be granted.