**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000172
20-SEP-2024
08:06 AM
Dkt. 60 SO**

NO. CAAP-20-0000172


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CARRIE N. NOBORIKAWA, Claimant-Appellant-Appellant,
v.
HOST INTERNATIONAL, INC., Employer-Appellee-Appellee,
and
ACE INSURANCE CO., adjusted by CORVEL CORPORATION,
Insurance Carrier-Appellee-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2018-009)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)

This is an appeal from an order by the Labor and
Industrial Relations Appeals Board (**LIRAB**) regarding permanent
partial disability (**PPD**) benefits.

Claimant-Appellant-Appellant Carrie N. Noborikawa
(**Claimant**) appeals from the February 19, 2020 Decision and Order

(**2020 D&O**) by LIRAB.  In the 2020 D&O, LIRAB held that Claimant was entitled to 8% PPD of the right lower extremity and 3% PPD of the left lower extremity from the result of a March 9, 2007 work injury.

On appeal, Claimant challenges the 2020 D&O, and argues that there were insufficient findings to support LIRAB's PPD percentages, and that LIRAB erred in its interpretation of the law regarding PPD.

Upon review of the record on appeal and relevant legal authorities, giving due consideration to the issues raised and arguments advanced by the parties, we affirm.

Claimant was employed as store manager, trainer, and specialized opener for new facilities by Employer-Appellee-Appellee Host International, Inc. (**Employer**) since January 27, 1994.  On March 9, 2007, Claimant injured both knees while on the job.  Employer accepted responsibility for Claimant's injury in a WC-1 Employer's Report of Industrial Injury.

On July 30, 2010, James R. Langworthy, M.D. (**Dr. Langworthy**) evaluated Claimant pursuant to Hawaii Revised Statutes (**HRS**) § 386-79.  Dr. Langworthy noted:  "pain," "swelling," and a "catching sensation" in Claimant's right knee; and "lesser pain" in Claimant's left knee with periodic "buckling" and "minor swelling."  Dr. Langworthy determined that Claimant was "medically stable," and noted a "5% impairment of the right lower extremity" and "no rateable impairment in the left knee" according to the American Medical Association (**AMA**) Guides.  Dr. Langworthy also noted that Claimant "will have to live with her residual symptoms."

On April 29, 2013, Claimant was reevaluated by Dr. Langworthy.  Dr. Langworthy noted:  a "tingling" sensation down the right leg, and a "tingling" sensation in the left leg when

overworked; "pain," "swelling," and "catching" in the right knee; "milder pain" and "swelling" in the left knee and occasional "buckl[ing]." Dr. Langworth determined that Claimant was "medically stable," and that the impairment ratings were the same.

Claimant engaged in vocational rehab (**VR**) services, which terminated on February 4, 2016. Claimant started a new job as a medical coder in 2016.

On September 13, 2016, Dr. Langworthy evaluated Claimant for a third time. Dr. Langworthy noted: "little pain" in the left knee; and "pain and swelling" in the right knee along with a "grinding noise with movement." Dr. Langworthy determined that Claimant was "medically stable," that there was a "5% impairment of the right lower extremity," and did not give a rating for the left lower extremity.

On October 18, 2017, a hearing was held to determine, inter alia, whether Claimant suffered any permanent disability or disfigurement as a result of the industrial injury.

On December 13, 2017, the Director of the Department of Labor and Industrial Relations filed a Supplemental Decision and Order (**2017 D&O**), determining that Claimant was entitled to 7% PPD of the right knee and no PPD of the left knee. Employer was ordered to pay Claimant weekly compensation of $540.83 for the 7% PPD of the right knee for approximately 25 weeks, for a total of $13,668.48 pursuant to HRS § 386-32(a).

On January 2, 2018, Claimant appealed the 2017 D&O to LIRAB. On appeal to LIRAB, Claimant argued that she should be awarded 20% PPD of the right knee and 7% PPD of the left knee. Claimant argued that other factors were to be considered in determining PPD, such as her inability to continue work with

Employer and the suffering she faced daily as a result of her injury.

On February 5, 2019, a trial was held before LIRAB. Claimant testified that since 1994, she worked for Employer as an assistant manager, store manager, certified trainer, instructor, and helped open new facilities. Claimant testified that her duties required her to travel interisland, be on her feet for "80 percent" of the time, and lift beer kegs up to 125 pounds. Claimant testified that she made around $65,000 per year, including bonuses. Claimant testified that after her March 9, 2007 injury, she was unable to return to work with Employer. As to the right knee, Claimant testified that she continued to have "painful, throbbing, swelling[,]" and "buckling"; that her right knee felt "hot" at the end of the day; and that she could not sit for extended periods of time without having to get up. As to the left knee, Claimant testified that she continued to have "[w]eakness, some aching[,]" "sharp pain," "buckling," occasional "swelling," and a "crunchy" sound. Claimant testified that after her injury, she enrolled in VR and later found work as a medical coder as of January 2016. As a medical coder, Claimant testified that she made approximately $16.00 an hour. Claimant testified that her injury affected her work because she has to "get up more often than others and walk around" due to not being able to sit for extended periods of time. Claimant testified that she can no longer lift heavy weights, has to wear special footwear, and has difficulty performing daily activities. Dr. Langworthy's July 30, 2010; April 29, 2013; and September 13, 2016 medical reports were also received in evidence.

On February 19, 2020, LIRAB filed its 2020 D&O, in which it modified in part and reversed in part the 2017 D&O.

LIRAB determined that Claimant was entitled to "8% PPD of the right lower extremity" and "3% PPD of the left lower extremity." LIRAB made the following findings of fact (**FOFs**) and conclusions of law (**COLs**):

**FINDINGS OF FACT**

1. Claimant, a high school graduate in her 30's, was unable to return to her usual and customary job as restaurant and bar manager as a result of her work injury to both knees.

2. While in VR, Claimant attended classes at Hawaiʻi Medical College to train as a medical coder or biller.

3. Claimant completed VR and was successfully rehabilitated. She found suitable and gainful employment as a medical coder/biller beginning January 6, 2016.

4. Claimant received an impairment rating of 5% for the right lower extremity and 0% for the left lower extremity from Dr. Langworthy, based on the AMA Guides.

5. [LIRAB] credits Claimant's testimony regarding her recurrent symptoms in the right knee and how they impacted her daily activities at home and at work.

6. [LIRAB] credits Claimant's testimony regarding her intermittent and recurrent symptoms in the left knee and how they impacted her daily activities at home and at work.

7. Claimant suffered a loss of physical function of both the right and left legs, as a result of the work-related bilateral knee injury.

8. In evaluating Claimant's PPD for the right and left lower extremities, [LIRAB] considered the impairment ratings by Dr. Langworthy based on the AMA Guides, Claimant's post-injury inability to return to her usual and customary job, the impact of the injury on Claimant's work in her new job, and her residual symptoms.

9. Claimant argued that she was 100% disabled from her usual and customary job, but presented no evidence to meet her burden of proving Claimant's entitlement to an award of 20% PPD for the right leg and 7% PPD for the left leg.

10. On this record and based on the foregoing findings, [LIRAB], in exercising its discretion as an expertise [sic] board, finds that Claimant sustained a permanent impairment of 8% of the right lower extremity and a permanent impairment of 3% of the left lower extremity.

. . . .

**ANALYSIS/DISCUSSION**

In assessing Claimant's impairment, [LIRAB] has considered not only Dr. Langworthy's impairment ratings, but also Claimant's testimony and documented reports regarding her symptoms in the right and left lower extremities, Claimant's inability to return to her bar and restaurant manager job, the injury's impact on the job she has been rehabilitated into, and any other factors that affect PPD assessment pursuant to *Ihara.*

Claimant argues that she should get a larger PPD award than a secretary (her example), who suffered the same injury and had the same residual symptoms, because that secretary is able to return to her usual and customary sedentary job; whereas, Claimant, who had a more physically demanding job, is 100% disabled from her usual and customary job. Claimant contends that it would be unfair for her to receive a PPD award that is comparable to that of the secretary whose injury did not impact her ability to return to her pre-injury job.

Claimant's argument is without merit. One cannot look only at the PPD award and conclude that the injured employee was or was not unfairly compensated for his or her injury. Each case is different and requires individual analysis.

Claimant's position ignores the statutory scheme in which injured employees who are not able to return to their pre-injury job are entitled to additional or different benefits, such as VR services and additional [Temporary Total Disability (**TTD**)] benefits during VR, the purpose of which is to reduce or remove barriers to reemployment.

In assessing impairment and awarding PPD for loss of physical or mental function, [LIRAB], as an expertise [sic] board, has the discretion to consider the entire record, beyond the doctor's impairment rating, including but not limited to, the impact of the injury on the injured employee's activities at home and at work, in the old, as well as any new job that the employee was rehabilitated into.

**CONCLUSIONS OF LAW**

1. [LIRAB] concludes that Claimant sustained permanent disability of the left leg as a result of her March 9, 2007 work injury. [LIRAB] concludes that Claimant is entitled to benefits for 3% PPD of the left lower extremity.

2. [LIRAB] concludes that Claimant is entitled to benefits for 8% PPD of the right lower extremity, as a result of her March 9, 2007 work injury.

Claimant timely appealed.

On appeal,[1] Claimant contends that LIRAB erred by holding that she was only entitled to 8% PPD of the right lower extremity and 3% PPD of the left lower extremity.

"Appellate review of a LIRAB decision is governed by HRS § 91-14(g)."  Botelho v. Atlas Recycling Ctr., LLC, 146 Hawaiʻi 435, 442, 463 P.3d 1092, 1099 (2020) (cleaned up).

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> 
> (1) In violation of constitutional or statutory provisions;
> 
> (2) In excess of the statutory authority or jurisdiction of the agency;
> 
> (3) Made upon unlawful procedure;
> 
> (4) Affected by other error of law;
> 
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> 
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Id. (quoting HRS § 91-14(g)).

Our HRS § 91-14 review of an agency's decision is "qualified by the principle that the agency's decision

---

[1] Claimant's points of error (**POEs**) in the Opening Brief do not comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4).  Claimant's POEs are not "set forth in separately numbered paragraphs."  See HRAP Rule 28(b)(4) (emphasis added).  While Claimant raises numerous POEs challenging various FOFs and COLs, Claimant does not present argument on why the challenged FOFs and COLs are clearly erroneous or wrong.  See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").  Rather, Claimant presents other arguments on why LIRAB erred in its PPD determination, which we address.

carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences." In re Water Use Permit Applications, 94 Hawai‘i 97, 118–19, 9 P.3d 409, 430–31 (2000) (citations omitted). We are to give deference to the agency's expertise and experience in the particular field and not substitute our own judgment for that of the agency. Dole Haw. Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990).

Claimant argues that LIRAB erred in its PPD determination because LIRAB: failed to "sufficiently explain how it reached its PPD award[]"; did not consider that "Claimant was permanently unable to perform the demanding duties of her job" with Employer; "erroneously relied on the efforts of VR to train Claimant as a medical coder/biller"; and "refused to recognize that PPD benefits are not indemnity [(TTD)] benefits."

A PPD award "compensates the worker not for total loss of income but for partial loss of function, either physical function or mental function." Ihara v. State Dep't of Land & Nat. Res., 141 Hawai‘i 36, 46, 404 P.3d 302, 312 (2017) (emphasis added). "[U]ltimately the director of the [LIRAB] . . . decides the final PPD rating." Id. at 43, 404 P.3d at 309 (citation omitted). "LIRAB generally places great weight upon a physician's initial impairment rating, but it is not the only component of [LIRAB]'s assessment." Id. (citation omitted). "LIRAB has the discretion to consider the entire record, even beyond the physician's impairment rating, to determine the most accurate impairment rating possible." Id. at 45, 404 P.3d at 311. LIRAB may consider "whether the complainant is able to participate in the same types of hobbies and daily and work

8

activities as prior to the accident."  Id. at 43, 404 P.3d at 309 (citations omitted).  LIRAB may also consider the inability to perform "usual and customary work."  Id. at 46, 404 P.3d at 312.

Here, in the 2020 D&O, LIRAB found that Claimant was unable to return to her previous job with Employer in FOF 1: "Claimant . . . was unable to return to her usual and customary job as restaurant and bar manager as a result of her work injury to both knees."  In FOF 8, LIRAB specifically stated what it considered in determining the PPD award:  "In evaluating Claimant's PPD . . ., [LIRAB] considered the impairment ratings by Dr. Langworthy based on the AMA Guides, Claimant's post-injury inability to return to her usual and customary job, the impact of the injury on Claimant's work in her new job, and her residual symptoms." (Emphases added.)  These FOFs are binding.  See Okada Trucking Co., Ltd. v. Bd. of Water Supply, 97 Hawaiʻi 450, 459, 40 P.3d 73, 82 (2002) ("[U]nchallenged factual findings are deemed to be binding on appeal . . . .").  LIRAB did not consider Claimant's new income as a medical coder, but rather considered the impact Claimant's injury had on her daily life, including the impact the injury had on her new job.[2]  See Ihara, 141 Hawaiʻi at 46, 404 P.3d at 312 (explaining that PPD compensation should not be based on loss of wages or earning capacity; however, LIRAB could consider claimant's inability to perform daily activities, as it may indicate a permanent partial loss of function) ("[A] total disability award is ultimately income-based; a partial disability award is ultimately function-based." (emphasis added)).

---

[2]     Claimant testified that her injury affected her work because it caused her to "get up more often than others and walk around."

Additionally, in the "Analysis/Discussion" section, LIRAB did not erroneously treat PPD benefits as TTD benefits. Rather, LIRAB accurately informed Claimant that she was not entitled to greater PPD benefits solely due to her inability to return to work, and that there were <u>other</u> benefits such as TTD for the inability to return to work with Employer:  "Claimant's position ignores the statutory scheme in which injured employees who are not able to return to their pre-injury job are entitled to additional or different benefits, such as VR services and additional TTD benefits during VR, the purpose of which is [to] reduce or remove barriers to reemployment."  LIRAB also accurately stated in its "Analysis/Discussion" section, that it had "<u>the discretion to consider the entire record</u>, beyond the doctor's impairment rating, including but not limited to, <u>the impact of the injury on the injured employee's activities</u> at home and at work, in the old, as well as any new job that the employee was rehabilitated into."  (Emphases added.)

Thus, the record reflects that LIRAB sufficiently explained how it reached its PPD award; LIRAB considered Claimant's inability to return to work with Employer; LIRAB did not rely on Claimant's compensation from her new job as a medical coder as a reason to reduce PPD; and LIRAB did not treat PPD benefits as TTD benefits.  See <u>Kauai Springs, Inc. v. Plan. Comm'n of Cnty. of Kauai</u>, 133 Hawai'i 141, 173, 324 P.3d 951, 983 (2014) (explaining that an agency "must make findings sufficient to enable an appellate court to track the steps that the agency took in reaching its decision" (citation omitted)).  Therefore, LIRAB did not err in its PPD determination.  See <u>Botelho</u>, 146 Hawai'i at 442, 463 P.3d at 1099; HRS § 91-14(g).

10

For the foregoing reasons, we affirm the February 19, 2020 Decision and Order by the Labor and Industrial Relations Appeals Board.

Further, Noborikawa's July 27, 2024 Motion for Retention of Oral Argument is also denied.

DATED:  Honolulu, Hawai'i, September 20, 2024.

On the briefs:

Wayne H. Mukaida
for Claimant-Appellant-
Appellant.

Jacqueline W.S. Amai
for Employer-Appellee-Appellee
and Insurance Carrier-
Appellee-Appellee.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge